## DRUDGE v. CITIZENS BANK OF AKRON.

[No. 26,576.  Filed May 24, 1935.  Rehearing denied
March 23, 1936.]

Campbell & Emmons, Arthur Metzler and Louis B. Ewbank, for appellant.

Hohman & Bernetha, Hiram G. Miller and Albert Ward, for appellees.

TREANOR, J.—This is an action brought by the appellant against the appellees for an accounting and settlement between the partners of the appellee bank. The partnership was dissolved and the bank went into liquidation on November 3, 1911. At or about the time of the dissolution the several partners appointed John McCullough as agent to assist them in the collection of the assets and payment of partnership debts. This arrangement continued up until the death of such agent, which occurred in 1928. In the year 1915 one of the partners, Andrew P. Harter, died, at which time the partners took out letters of administration, as provided by statute for the settlement of surviving partnerships. Shortly thereafter the appellant filed a claim against the estate of said Andrew P. Harter for the pro rata share that said estate might owe the appellant upon an accounting and settlement of the partnership, after the assets had been collected and the debts of the partnership had been paid, other than the obligations between the partners themselves. The collection of the assets and the settlement of the claims against the partnership, whether by suit or otherwise, was continued until November 10, 1917, at which last date the partners succeeded in finishing the collection of assets and payment of debts as between the partnership and persons other than partners. On April 7, 1922, after all the assets were collected and debts paid, other than adjustments between the partners, the appellant brought suit for an accounting and settlement as between the partners themselves. This is the cause of action now before this court. (Appellant's Brief, pp. 1-2.)

The following allegations of the complaint show more particularly the nature of appellant's claim and the relief sought:

"That the debts and expenses of said bank have all been paid and there is now a balance remaining, as

plaintiff understands and believes, of some amount, but plaintiff says that there is not enough assets to proportion and divide among the partners so that each will have his representative interest of the funds that the bank used belonging to the partners, and particularly to this plaintiff, in this, to-wit:

"That at the time of the voluntary liquidation by said private bank, the bank had, in its possession, certain notes and mortgages belonging to this plaintiff, which had been entrusted to the care and custody of said bank by plaintiff for safe keeping, and under the private banking act, the said John McCullough, as liquidating officer, was entitled to and did hold possession of plaintiff's notes and securities and collect the same and applied the same to the payment of the debts of the bank, and thereby this plaintiff has paid into said banking business more than his proportion of the amount required to liquidate and there is now due plaintiff, from his co-partners, contribution in the sum of twenty thousand dollars ($20,000.00).

"That plaintiff has demanded an accounting and the payment of the amount due him from the defendants and each of them, but the defendants refused to account with this plaintiff or to make any settlement.

"That said amount of Twenty Thousand Dollars ($20,000.00) including interest is now due this plaintiff on account of the use of the money of this plaintiff, by the said bank, as his proportionate share of the excess of debts and expenses paid by him and said amount is unpaid.

"Wherefore, plaintiff prays that the defendants be compelled to account with him touching the premises and be ordered to pay over to plaintiff any balance found due to him on such accounting, with costs, and he prays for all further and proper relief."

At the time of the trial of this cause two other suits

were pending in the Marshall Circuit Court and by agreement of parties "all three of said causes were submitted to the court for trial, and finding and decree, at one and the same time, the evidence, so far as applicable, to be applied to each cause, and the conclusions of law, so far as applicable, to apply to each of said causes." The appellant was plaintiff in these two suits, one of which was against "The Surviving Partnership of Citizens Bank, Akron, Indiana, et al." for money had and received and the other against the "Estate of Andrew P. Harter et al." to recover any amount found to be due appellant upon the final settlement of the partnership, Andrew P. Harter, having been one of the partners at the time of his death.

The judgment of the trial court was for the defendants in the suit for money had and received as well as in the case at bar. Appellant, plaintiff below, ██ did not prosecute an appeal in the former cause and after the expiration of the statutory period for an appeal the appellee filed a motion for dismissal of the instant appeal. We quote the following from appellees' brief in support of their motion to dismiss:

"It is the position of appellees that since the rendition of the judgment in the court below in the cause herein, that the question between the parties has become fully terminated; that the question has, therefore, become moot and the appeal should be dismissed, under the showing made in the motion, which may be summarized as follows:

1. Cause 17710 below was the companion case of cause 17711, from the judgment in the latter case this appeal is prosecuted.

2. Cause 17710 may, for the sake of brevity, be designated as a claim by appellant herein against the surviving partnership of Citizens' Bank, Akron, Indiana, composed of appellant, Andrew P. Harter (now deceased), William C. Miller, William K. Stevenson, Charles Harter, Valentine J. Lidecker and Amos C. Emahiser (now deceased).

3. Cause 17711 may be designated as a suit for

accounting brought by appellant herein against Citizens Bank, Akron, Indiana, William C. Miller, William K. Stevenson, Charles Harter, Herbert Harter, Administrator of the estate of Andrew P. Harter, deceased; Valentine J. Lidecker and Hubbard D. Stoner, Administrator of the estate of Amos C. Emahiser, deceased.

4. That issues were formed in each of said causes involving the same subject-matter.

5. That said cause 17710 was consolidated with cause 17711 for the purpose of trial only and a trial was had on the merits of said causes, as consolidated.

6. The facts were found specially and conclusions of law were stated thereon applicable to both of said causes.

7. That judgment was rendered on May 28th, 1930, in said cause number 17710, that plaintiff (appellant herein) was not entitled to recover from defendants on claim sued upon, and that plaintiff (appellant herein) take nothing and that plaintiff (appellant herein) pay the costs.

8. That judgment was rendered on May 28, 1930, in cause 17711 (from which the appeal herein is prosecuted), that plaintiff (appellant) was not entitled to an accounting as against defendants (appellees) and that he take nothing on his complaint and that he pay the costs.

9. That no appeal was ever taken from said judgment in cause 17710 and that said judgment is in full force and effect.

10. That the time in which an appeal could be taken from said judgment in cause 17710 has fully expired, that is, more than one hundred eighty days has elapsed since May 28, 1930."

Cause 17710 is an action to recover a claim against the partnership, the claim being based upon the alleged conversion by the partnership of three notes belonging to appellant and the application of the proceeds of the notes to the payment of the debts and obligations of the partnership. Appellees do not insist that the complaint in cause 17710 alleges facts sufficient to constitute a cause of action for an accounting but do contend that causes 17710 and 17711 involve the same subject-mat-

ter. The gist of appellees' contention is contained in the following statement: "It appears from the complaint in cause 17710 that the real controversy involved is the three notes set up as exhibits to the first paragraph, and a reference to the record in this appeal setting out the complaint in cause 17711 in the court below . . . (shows that) . . . the gravamen of the action is an accounting for an amount alleged to be due on certain notes and mortgages." It is clear from the foregoing that the same three notes are involved in both 17710 and 17711. But if 17710 states a cause of action it is simply to recover for the conversion of the three notes; while allegations of the complaint in 17711 state a cause of action for a complete accounting of partnership affairs for the purpose of adjusting and equalizing the burden of contribution among the partners. There is no reliance upon a wrongful appropriation of the proceeds of the notes. Such appropriation is treated as lawful (which it was) and as a contribution of plaintiff to the discharge of the partnership debts and is relied upon to support the allegations that the "plaintiff has paid into said banking business more than his proportion of the amount required to liquidate and there is now due plaintiff, from his co-partners, contribution in the sum of twenty thousand dollars ($20,000)." To succeed in his suit in equity (17711) against his partners for an accounting and contribution the plaintiff had the burden of showing at least: "(1) The existence of the partnership; (2) the number of partners; (3) the respective proportionate interest of each partner, including the plaintiff; (4) how much in excess of his proportionate interest plaintiff had put in or otherwise contributed (by his notes and mortgages or otherwise) ; also (5) the dissolution or existence of cause for the dissolution of such partnership; and (6) a proper demand for an accounting." (Appellant's Brief on petition to transfer, p. 27.)

The possible issues in cause 17710 could not have comprehended the material questions presented by the suit in equity. "The rule that every question which might have been decided or litigated in a cause will be presumed to have been decided means that every question which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated." (*Jordan* v. *Sisson* [1924], 82 Ind. App. 128, 141 N. E. 881.)

In our opinion the judgment in cause number 17710 does not constitute an adjudication of the questions presented in cause number 17711.

Appellees' motion to dismiss is overruled.

Appellees filed eight paragraphs of answer of which only two, the second and eighth, are material to the discussion of this appeal. The second paragraph alleges that the "plaintiffs cause of action did not accrue within six years before the bringing of this action" and the seventh paragraph "is based upon the want of equity and jurisdiction of the court to entertain the proceedings as an action for accounting upon the facts alleged in said seventh paragraph of answer." (Appellees' Brief, p. 3.)

Upon the facts found the court stated the following conclusions of law:

"1. That the law is with the defendants in causes number 17711 and 17710, *supra.*

"2. That more than six years elapsed between the time the plaintiff's cause of action accrued and the bringing of actions number 17710 and 17711 *supra,* and that the bringing of the action in the year 1916 and the dismissal thereof in the year 1922 by the plaintiff, did not extend the time within which said actions might be brought.

"3. That the plaintiff in said actions number 17710 and 17711 is not entitled to an accounting, or the relief prayed for in the complaints therein, and that he take

nothing therein, and that he pay the costs of said actions.

"4. That in cause number 17709, *supra*, the law is with the plaintiff.

"5. That the plaintiff is entitled to, and shall, recover of the estate of Andrew P. Harter, in said cause number 17709, the sum of $4,291.71, with interest thereon from December 10th, 1929, at the rate of six per cent per annum, and the costs of said action."

We shall first consider appellant's 3rd, 4th, and 5th assignments of error. They are as follows:

"3. The court erred in its conclusion of law number 1 upon the special findings of fact.
"4. The court erred in its conclusion of law number 2 upon the special findings of fact.
"5. The court erred in its conclusion of law number 3 upon the special findings of fact."

It is clear that the second conclusion of law is directed to the second paragraph of answer which pleaded the statute of limitations. And this conclusion rests upon finding No. 26 which states that the action for an accounting was brought "about eight years and ten months after the last of the notes and proceeds thereof aforesaid was appropriated by the liquidating agent to make funds for the payment of the depositors and creditors of said bank." Appellant urges that "the reason to be assigned for conclusion No. 3 is to be gathered from conclusions Nos. 1 and 2, namely that the law is with the appellees in that the second paragraph of answer has been established." That is, conclusion No. 1, *supra*, is merely a general conclusion based upon the more particular conclusions numbered 2 and 3 and is not an independent conclusion based directly upon any finding or findings. But appellee insists that conclusion number 1 is independent of the second and third conclusions and rests upon various findings of facts which sustain the

special defense of appellees' seventh paragraph of answer, the gist of this paragraph of answer being that the irregular transaction between appellant and the cashier of the bank respecting the Teel note amounted to such a breach of partnership duty by appellant as to deprive him of any right to an accounting and contribution.

We shall first consider the second conclusion of law. Obviously the correctness of the conclusion "that more than six years elapsed between the time the plaintiff's cause of action accrued" and the bringing of action 17711 for an accounting depends upon when the cause of action accrued. The trial court assumed that the cause of action for an accounting accrued when the "notes and proceeds thereof aforesaid" were appropriated by the liquidating agent for the use of the partnership. In a suit based upon conversion that might be true. But appellant's cause of action for an accounting did not accrue until facts existed which fixed the liability of the co-partners *inter sese*. This situation cannot be said to have existed before November 10, 1917, in view of finding No. 19 which states "that the assets and obligations due said Citizens Bank were all collected by said liquidating agent on or before November 10, 1917, and all obligations of said bank, other than said obligation to Esther Johanna Miller, court costs, and the contingent liability of the partners to Charles Drudge, as hereinbefore set out, were paid and discharged on or before November 10, 1917." Since appellant brought this action for an accounting and contribution in April, 1922, it was not barred by the statute of limitations, regardless of whether the six-year period, as claimed by appellees, or the fifteen-year period, as claimed by appellant, applied. It follows that the second conclusion of law is not supported by the findings.

The findings of the trial court clearly and definitely cover the merits of appellant's claim for an accounting and contribution. The court found that in the course of liquidation of the banking business the liquidator treated as assets of the partnership bank three notes belonging to appellant; and that the liquidator realized from these notes the total sum of $9,789.35, all of which sum was applied to the payment of partnership debts. The court also found (findings 18 and 22) that all the assets of the bank were converted into cash; that (excluding the proceeds of the three notes) the partners, including the appellant, made pro rata contributions totaling $12,289.32; that "all debts of the bank are fully paid, except the court costs and attorney's fees; that there are no funds in the hands of the liquidating officer, or in the possession of the surviving partners, except a small balance of $0.23, and no further source of revenue of any kind remaining in the hands of the liquidator." (Finding 22.) From the facts found the court could compute the amount which the appellant contributed to the payment of partnership obligations in excess of his proper share and the amount of reimbursement which appellant was entitled to receive from each partner. It is clear from the facts above stated that there were no partnership assets from which to reimburse appellant and that the only source must be contributions from his co-partners. It is also established by the facts found that the effect of the appropriation of the proceeds of appellant's notes was that appellant contributed to the payment of partnership obligations $9,789.35 more than his pro rata share.

The findings included the following which, appellant concedes, were essential to his cause of action for an accounting and contribution:

(1) The existence of the partnership.
(2) The number of partners.

(3) The respective proportionate interest of each partner, including the plaintiff.

(4) How much the plaintiff had contributed in excess of his proportionate interest.

(5) That all partnership obligations had been paid by the liquidating agent out of partnership assets supplemented by contributions of the partners.

(6) That there were no partnership funds from which the plaintiff could be reimbursed.

(7) The dissolution of the partnership.

(8) A proper demand for an accounting.

In view of the findings of facts to which we have referred we think the appellant was entitled to an accounting and judgment for contribution unless, as insisted by appellees, certain other findings of facts reveal such inequitable conduct by appellant as to deprive him of any right to contribution.

The allegedly inequitable conduct related to the handling of the three notes. The payee of the two Merley notes was John H. Grindle and he had sold these notes to appellant's father from whom appellant had purchased them. These notes carried the indorsement in blank of "John H. Grindle." The notes were secured by a mortgage on certain real estate. The notes were left "with the Citizens Bank, Akron, Indiana, and Howard B. Harter, as cashier thereof, for safe-keeping, and collection as the same became due." At the time of the purchase of the notes by appellant he became the owner of the mortgage, but the court found that "said mortgage was not assigned to him, and that no assignment thereof to him was placed of record, and that no instrument of any kind was placed of record in the Recorder's office of Fulton County, Indiana, or a copy thereof filed with the Auditor of State of Indiana, showing that said Charles Drudge was the owner of said mortgage or of said notes, or that the same were held in trust by said bank for him. That on November

3, 1911, at the time said bank went into liquidation, said two unpaid notes were still in the possession of the bank, and uncollected." (Finding 8.)

The following findings and excerpts from findings disclose the character of the transactions respecting the Teel note and furnish additional facts about the Merley notes.

"9. That sometime during the summer of the year 1910, one Willard Teel, a property owner of Fulton County, Indiana, desired to secure a mortgage loan on his farm property, and applied to the plaintiff herein for a loan, but was told by the plaintiff that he did not then have sufficient funds to make the loan, and was by the plaintiff referred to Howard B. Harter, as cashier of Citizens Bank, Akron, Indiana. That Howard B. Harter, as cashier, informed plaintiff herein that the loan requested was larger than the bank could handle, whereupon the plaintiff told Howard B. Harter, as cashier, to make the loan and that he, the plaintiff herein, would take it off the bank's hands in a short time. That thereupon Howard B. Harter, as cashier of said bank, did loan to Willard Teel the sum of $7,500.00 of the funds of said bank, and took from Willard Teel his promissory note payable to said bank, and a mortgage on real estate of Willard Teel in Fulton County, Indiana, payable to said bank.

. . . . . . . . . .

This said note and mortgage were delivered to said bank on September 1, 1910, and the bank, through its said cashier, delivered to Willard Teel the sum of $7,500.00 of its funds.

"10. That on November 21, 1910, said bank, through Howard B. Harter as cashier thereof, sold said note and mortgage of Willard Teel to the plaintiff, Charles Drudge, and Charles Drudge paid to the bank the full purchase price of said note and mortgage, to-wit: The sum of $7,500.00, and thereby became the owner of said note and mortgage.

"That on purchasing said note and mortgage the plaintiff left said note and mortgage with Howard B. Harter, as cashier of said bank, and with said bank, for safe-keeping and collection. That neither

the note nor mortgage were assigned or endorsed to plaintiff, and that no assignment of said note and mortgage to the plaintiff herein was placed of record, and that no instrument of any kind was placed on record in the Recorder's office of Fulton County, Indiana, or in any other county, or a copy thereof filed with the Auditor of the State of Indiana, showing that the plaintiff, Charles Drudge, was the owner of said mortgage, and note secured thereby, or that the same was held in trust for him. That none of the notes or mortgages in these findings mentioned were listed by Howard B. Harter, for purpose of taxation, in the schedules signed and filed by him, and he paid no taxes thereon.

"11. That neither the plaintiff, Charles Drudge, nor the cashier, Howard B. Harter, mentioned to any of the directors or officers of said bank that said notes or mortgages were the property of Charles Drudge, until after said bank was, in fact, insolvent.

"12. That about the year 1908, said cashier, Howard B. Harter, began speculating and gambling on the Board of Trade, Chicago, Illinois, and that for some time previous to the closing of said bank, had used and embezzled the funds of said bank in said gambling, in the amount of about $33,000.00, and to such an extent that said bank was insolvent for several months prior to the date of its closing, and that in an effort to cover up and hide the fact of his embezzlement, the said cashier, in the fall of the year 1911, took the said notes herein mentioned, and the property of the plaintiff, Charles Drudge, and placed them among the assets of the bank, so that it appeared they belonged to the bank, and gave himself credit on his own personal account with said bank, equal to the total amount of the face value of said three notes of Charles Drudge.

"That the act of appropriating said notes by the cashier of said bank was unknown to the plaintiff, Charles Drudge, and was unknown to all of the other officers and directors of said bank, until after the bank was closed. That none of the officers or directors of said bank actually knew the details of the loan to Willard Teel, although the discount record of the bank carried an entry showing the purchase

of the note, and that the same was sold on November 21, 1910.

"That the plaintiff, Charles Drudge, knew nothing about the gambling of the cashier, Howard B. Harter, on the Board of Trade, and knew nothing about the defalcation or insolvency of said bank until it was closed by the State Bank Examiner, and took no part in any of said gambling transactions.

"That the private ledger account of Howard B. Harter shows a deposit of $7,500.00 on September 4, 1911, and on that date said mortgage note of the plaintiff, executed by Willard Teel, was by Howard B. Harter placed among the assets of the bank. *That prior to that time, from the date of the purchase of said note by the plaintiff* the note and mortgage had been *left in* a pigeon hole in the bank files, but not among the *assets* of the bank. That the $7,500.00 credit on the private ledger account of Howard B. Harter, entered September 4, 1911, was immediately by him checked out to make up his losses on the Board of Trade. (Our italics.)

.    .    .    .    .    .    .    .    .    .

"24. That none of the officers or directors of said Citizens Bank, Akron, Indiana, knew of the speculation of Howard B. Harter on the Board of Trade, or of his defalcation, prior to the evening previous to the day on which said bank was closed by the State Bank Examiner of Indiana, and none of the officers or directors of said bank knew that Charles Drudge was the owner of, or claimed an interest in any of said notes or mortgages, except Charles Drudge and Howard B. Harter, prior to the evening previous to the day the bank was closed, and learned said facts then, only after all of said officers and directors, including Charles Drudge, and excepting Howard B. Harter, had signed a report of the State Bank Examiner, showing the condition of the finances of said bank, prepared by the State Bank Examiner, and in which said notes were included as being a part of the assets of the bank. That at the time of signing said statement Charles Drudge did not realize or know that said notes were included as a part of the assets of the bank, but learned thereof shortly after the report was signed and forwarded to the Auditor of State.

"That said Merley notes were endorsed in blank by the payee thereof, and that said Teel note was payable to said bank, and not endorsed, all being left in that condition at the request of Charles Drudge, for the purpose of avoiding taxation, although at the time of making his schedule of property owned, for the purpose of filing the same with the Township Assessor for the Township in which he lived, Charles Drudge did mention to the Assessor that he owned some notes, but that he owed more on notes than he owned, and that his debts and notes balanced, or words to that effect.

. . . . . . . . . . .

"28. That on the 3rd day of November, 1911, the date of the closing of said bank, the plaintiff, Charles Drudge, informed his co-partners that he was the owner of the Merley and Teel notes, hereinabove set out, and that he was entitled to the possession of the same, but that possession thereof to him was refused."

The foregoing findings do not show any such breach of duty to his partners as to support a conclusion of law that the plaintiff below lost his right to an accounting and contribution. The partnership business was not in any manner prejudiced by the fact that the notes were left with the bank for safekeeping and collection. The fact that the Merley notes were indorsed in blank and that the Teel note was not indorsed to the appellant when he purchased it from the bank did not injure the partnership, even though appellant and the cashier understood that the purpose was to enable the appellant to avoid taxation on the notes. Granting that appellant took advantage of his personal and business relationship to the cashier of the partnership bank to conceal his ownership of the notes and thereby avoid taxation on them, still his conduct did not give him any advantage or gain which good faith on his part required that he turn over to the partnership. He, in fact, did not gain anything which could have been of value or benefit to the partnership. Further, the failure of Drudge to have

an instrument executed and recorded which would have disclosed that the notes were held by the bank as trustee for Drudge[1] resulted in no injury to the partnership but did place upon the liquidating agent the duty of appropriating the notes for the benefit of creditors. Drudge clearly did not gain any advantage from this as against either his partners or the creditors of the partnership.

The court found that the Citizens Bank, by its cashier, held the notes for safe keeping and collection and no facts were found to exist which would have given Drudge any reason for suspecting that the cashier might take advantage of the facts that the Merley notes were indorsed in blank and that the Teel note was not indorsed. No facts were found upon which to predicate a breach of duty by Drudge by reason of his failure to inform his partners of his ownership of the notes. Indeed no finding establishes that Drudge knew, or had any reason to suspect, that his co-partners believed that the notes belonged to the partnership bank. When

1. "Should any bank organized under the provisions of this act, or any owner or owners thereof, hold any property in trust for another, the fact of such trust, the general nature and character thereof, the acceptance of the same and the amount so held shall be set forth in an instrument to be executed by the trustee and acknowledged by him before a notary public. Within fifteen (15) days after the execution of such an instrument it shall be recorded in the office of the county recorder of the county in which such bank is situated. Within thirty (30) days thereafter, the original instrument together with the certificate of the county recorder, showing 'that it has been duly recorded, shall be filed with the auditor of state with a record fee of one dollar ($1.00) for the state. Should such instrument not be so recorded and filed and such bank should be wound up, either voluntarily or involuntarily, then the property so held in trust shall be considered a part of the assets of such bank, provided the remaining assets are not sufficient to pay in full the bona fide claims of all depositors. Until such claims are paid in full all persons shall be estopped from asserting, as against such depositors, any right, title or interest in and to the property so held in trust: Provided, however, That no forfeiture of property herein provided for shall be taken to excuse any such bank or any owner or owners thereof from any penalty hereinbefore fixed." §18-2709, Burns Ind. St. Ann. 1933, Acts 1907, ch. 113, §10, p. 174. *Drudge* v. *Citizens Bank* (1916), 64 Ind. App. 217, 113 N. E. 440.

Drudge purchased the Teel note from the partnership bank "the discount record carried an entry showing the purchase of the note and that the same was sold on November 21, 1910." The note was removed from the assets of the bank on that date and placed "in a pigeon-hole in the bank files" until September 4, 1911, when the cashier placed it with the assets of the bank. The court found that Drudge's co-partners did not know that the Merley notes and the Teel note belonged to Drudge; but there is no finding that they knew of the existence of any of the notes until after the bank examiner had closed the bank. None of the notes ever was carried as assets of the bank in any official report made prior to its closing. Since Drudge had no reason even to suspect that his co-partners believed the notes belonged to the bank he was under no duty to inform them that he was the owner. And he was under no duty to anticipate that the cashier would place the Teel note among the assets as the basis of a deposit to his credit in his personal account with the bank. And neither Drudge nor his co-partners knew of this manipulation until after the bank was closed.

In short, as we understand the special findings, there is no basis for a conclusion either that Drudge acted in bad faith toward his partners or that any injury resulted to the partnership as a result of Drudge's acts in connection with the handling of the three notes.

Consequently the general conclusions of law, numbers one (1) and three (3), cannot be upheld upon the ground that the findings of facts show a violation by the plaintiff of a duty to his co-partners. And we also hold that the findings require conclusions of law in favor of the plaintiff in his action for an accounting and contribution and that his cause of action was not barred by the statute of limitations.

The trial court erred in stating the first, second, and

third conclusions of law and the judgment must be reversed. There is, however, no necessity for a new trial. The findings of the trial court are full and complete and furnish all facts necessary to compute the amounts of contribution to which appellant is entitled in cause number 17711.

On the date of the closing of the partnership bank the total number of shares of stock owned by the partners was one hundred and twenty-five. While each partner's liability was unlimited as to creditors, yet, as between partners, the liability must be borne in proportion to each partner's interest as measured by his number of shares. Later, and prior to the trial of this cause, the cashier surrendered his thirty-five (35) shares and appellant urges that the cashier's interest should be disregarded in apportioning contribution. The trial court based each partner's interest and obligation upon the ratio of the number of his shares to one hundred and twenty-five; but appellant insists that the basis should have been the ratio of the number of each partner's shares to ninety. We believe that the ratio adopted by the trial court was correct. Cashier Harter was responsible for the partnership debts which existed at the time the bank was closed and any debt which was discharged by the proceeds of appellant's notes was the debt of Harter as well as of his co-partners. As between appellant and his co-partners, other than Cashier Harter, the co-partners are entitled to have Harter make his pro rata contribution to appellant. Cashier Harter was not made a party defendant and the record does not disclose any reason for his omission; nor any objection thereto. The findings disclose his partnership interest and the trial court was required to consider this in fixing the amounts of contribution of the other partners. Appellants state that Harter is insolvent, and this may be true. If this had

been relied upon in the trial, and the court had so found, then, under the familiar maxim that equality is equity, Harter's interest should have been disregarded in fixing the amounts of contribution. But in the absence of any finding on that point we cannot shift his liability to his co-partners.

As stated above, the irregular method of handling the Merley and Teel notes does not bar the appellant from enforcing his right to contribution; but it does materially affect the question of the amount of interest. In computing interest the trial court assumed that appellant, if entitled to an accounting and contribution, should recover interest from the date of the collection of the Merley notes (June 6, 1913) and the date of the foreclosure of the mortgage securing the Teel note (April 25, 1913). That assumption was correct for cause number 17710 in which the cause of action rested upon an alleged conversion of the notes and misappropriation of the proceeds thereof. But the case at bar assumes the legality of the act of appropriation of the proceeds of the notes. By reason of appellant's failure to execute and record an instrument showing his ownership of the notes, it became the duty of the liquidating agent to use these notes as assets of the bank. Since the appellant alone was responsible for the situation which, without action or fault on the part of his partners, required the notes to be applied as assets of the bank we must, as between the appellant and appellees, treat the notes and proceeds thereof as a voluntary advancement by appellant to facilitate the administration of the affairs of the insolvent partnership. Later the partners, including the appellant, made voluntary contributions for the purpose of paying partnership debts. In view of the foregoing it cannot be said that appellees were wrongfully withholding money from appellant prior to his demand for an accounting and con-

tribution. Consequently interest cannot be charged prior to demand. The cases generally hold that allowance of interest in an accounting between partners depends upon the special facts of the case; and it has been said that "no unbending rule can be laid down but each case must stand much on its own facts and circumstances." (*Carroll* v. *Little* [1888], 73 Wis. 52, 40 N. W. 582.) In the instant case a suit was commenced about two weeks after demand and we believe that interest should be allowed from the date of the commencement of the suit and computed upon the principal sum of $9,789.35.

Judgment reversed and cause remanded with instructions to restate conclusions of law and enter judgment thereon in harmony with this opinion. The trial court is further directed to receive supplemental pleadings showing facts which have occurred since its judgment was rendered and which bear upon the solvency of the appellees in its relation to the rendering of a proper judgment in the cause.