May Term,
1858.
—————
Davis
v.
McAlpine.

———————

## Davis *v.* McAlpine.

A note payable *at* a bank, is payable *in* the bank; and a note payable *at* or *in* a bank, is payable to the holder, or his agent, in the bank, at its counter.

The term *bank* does not necessarily refer to a chartered banking institution; though it includes all such, and is used in our constitution simply in reference to that class of banks.

Charters are not requisite for banks of deposit and discount.

The legislature, by § 6, ch. 77, 1 R. S. 378, intended to place private and chartered banks of deposit and discount upon the same footing.

APPEAL from the *Wayne* Circuit Court.

Tuesday,
May 25.

PERKINS, J.— *McAlpine*, assignee of *Cochran*, sued *Davis* upon a promissory note here copied:

" Ninety days after date I promise to pay *Samuel Cochran*, or order, 550 dollars, for value received, waiving all valuation and appraisement laws, with interest from date, payable at the *Citizens' Bank* at *Richmond, Indiana. November* 20, 1856. [Signed] *David J. Davis.* [Indorsed] *Samuel Cochran*."

The defendant pleaded, by way of answer, a want of consideration for the note, and averred "that the *Citizens' Bank*, in the complaint named, was an unincorporated business-house in the city of *Richmond, Indiana,* receiving deposits of gold and silver and bank bills, and paying out the same; buying and selling gold and silver, bills of exchange, promissory notes, and bank-bills; discounting bills of exchange and promissory notes, and loaning money; and nothing more."

The plaintiff demurred to the answer; the Court sustained the demurrer; and there was final judgment for the

plaintiff for the amount of the note. The only general question which the parties raise, or seek to raise, is, whether the note sued on is governed by the law merchant.

It is enacted by § 6, 1 R. S. p. 378, that "notes payable to order or bearer, in a bank in this state, shall be negotiable as inland bills of exchange, and the payees and indorsees thereof may recover as in case of such bills."

Prior to 1843, the statutory provision on this subject was, that notes payable at a chartered bank, &c., should be governed by the law merchant.

In the code of 1843 it was, that notes payable at a chartered bank, where the bank had an interest in the notes, should be governed by the law merchant, &c.

The provision in the code of 1852 differs, therefore, from all previous ones, in this, that it uses the word *in* instead of *at*, in describing the place of payment, and omits the word *chartered*, in describing the institution to be designated in the note.

Counsel for the appellant attach some stress to the substitution of the preposition *in* for *at*, insisting that it has the effect of limiting the operation of the statute to notes payable to the bank as owner; but we cannot concur in this view. We think a note payable *at* a bank is, in legal contemplation, payable *in* the bank; and that a note payable *at* or *in* a bank is, in such contemplation, payable to the holder, or his agent, *in* the bank, *at* its counter.

The only point of difficulty in the case, and the one on which it turns is, did the legislature, in using the word *bank*, in the code of 1852, mean chartered bank? Did they use the term in a general or in a limited signification? The presumption would be in favor of the use in its general signification. Ind. Digest, p. 748, § 10.—2 R. S. pp. 339, 340. And a very brief and general statement of the subject of banks and banking, as it existed prior to, and at the date of, the enactment of the code in question, will, we think, tend to strengthen rather than to overthrow that presumption.

Three kinds of banks had long been known to the commercial and business world, viz., banks of deposit, banks

of deposit and discount, and banks of deposit, discount and circulation. The three kinds seem to have originated chronologically, in the order named. The cities of ancient *Asia*, *Egypt*, *Greece* and *Rome* had banks of deposit, and later, of discount, and so had those in the mediæval period; and, at this day, there are, perhaps, upon the eastern and western continents as many and as wealthy banks of deposit and discount as there are of circulation.

Charters are not requisite to banks of deposit and discount. Charters seem only requisite for conferring special privileges: as, to exempt the owners of the banks from personal liability for debts; to enable them to issue paper currency, &c. These charters seem to have been a comparatively modern invention, and were granted, in the first instances, by embarrassed governments to their creditors, in return for bonuses paid. The earliest instance mentioned by writers, so far as our reading has extended, of a chartered bank, is that of *Venice*, in 1157.

From this hasty review we learn very distinctly that the term *bank* does not necessarily refer to a chartered institution; though it includes all such, and is used in our own constitution simply in reference to that class of banks. A further historical fact, local to our own state, may indicate to us the reason why the legislature made the change in the phraseology of the code of 1852, by the omission of the adjective *chartered* before bank. Private banks of deposit and discount must have existed to a very limited extent, if at all, in this state, during the period of our early legislation. But in later years they have become numerous, and are discharging a large portion of the banking business. The public attention has been attracted to them, and the relative advantages and disadvantages of private and chartered banks have been largely discussed, and the public mind has been, and is, divided upon the question of their claims to public favor. Under these circumstances, we incline to the opinion that the legislature, by the code of 1852, designed to put these two classes of banks on an equal footing in the particular specified.

The answer of the defendant in this case, showed that

May Term,
1858.

the *Citizens' Bank* was a bank of deposit and discount. It follows that the Court did not err in sustaining the demurrer to it.

,*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*J. Perry,* for the appellant (1).

*J. ,S. Newman* and *J. P. Siddall,* for the appellee (2).

