HALL ET AL. *v.* ESSNER ET AL.
[No. 26,251. Filed December 14, 1934. Rehearing denied March 14, 1935.]

*Henry B. Heller, James D. Sturgis, Simmons & Simmons, Dailey & O'Neal,* and *Robert Efroymson,* for appellants.

*E. C. Vaughn,* and *John F. Decker,* for appellees.

*Hammond, Bushman & Gardner,* amici curiae.

TREANOR, J.—The Bank of Tocsin was organized as a bank of discount and deposit pursuant to the provisions of an act of the General Assembly of the State of

Indiana entitled "An act to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons," approved March 8, 1907. (Acts 1907, ch. 113, p. 174; §§3925-3938, Burns Ann. Ind. St. 1926, §§18-2701—18-2714, Burns 1933, §§8028-8036, Baldwin's 1934.

On May 23, 1925, a receiver was appointed for said bank. On May 26, 1928, this action was commenced in the Wells circuit court by the plaintiff as a creditor of said bank on behalf of himself and all others similarly situated against shareholders of said bank to recover the money due said creditors from said bank on the theory that the shareholders were liable as common law partners.

The Articles of Copartnership contain the following:

"We, the undersigned, do hereby organize ourselves as a partnership, under and pursuant to the provisions of an act of the General Assembly, of the State of Indiana, entitled an act to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons, approved March 8, 1907, and amendments thereto, if any, and we adopt the following as our articles of copartnership:

"Articles of Copartnership.

First: The name of this partnership shall be Bank of Tocsin:

Second: Said bank shall be a bank of discount and deposit and do a general banking business in the town of Tocsin, in the County of Wells, in the State of Indiana.

Third: That the amount of paid up capital of said partnership shall be ten thousand dollars, which amount shall be kept and maintained at all times in the partnership business.

Fourth: The capital stock of said partnership shall be ten thousand dollars, and shall be divided into one hundred shares of one hundred dollars each.

Fifth: The names and places of residence of the members of this copartnership and the number of shares of stock owned and held by each is as follows:"

Appellants, defendants below, rely upon the following alleged errors of the trial court: The court's error in overruling said separate and several demurrers of Irwin Wasson and certain other appellants;

The court's error in overruling the separate and several demurrer of Ferdinand Mettler as surviving partner of Schug-Mettler & Company;

The court's error in its first conclusion of law;

The court's error in its second conclusion of law;

The court's error in its third conclusion of law;

The court's error in its fourth conclusion of law;

The court's error in its fifth conclusion of law.

This case, upon its merits, involves this single question: Are the "stockholders" in a private bank subject to the common law liability of partners for debts of the bank, or is their liability limited by §6, Art. XI, of the Indiana Constitution to an amount equal to "their respecive shares of stocks"?

Appellants', case on appeal, as presented under "Points and Authorities" and "Argument" rests ultimately upon the following propositions:

I. By force of the provisions of the Act of 1907 (Ch. 113, §§3925-3938, Burns, etc., 1926, *supra*) private banks subject thereto are in law corporations and the liability of "stockholders" therein is governed by §6, Art. XI of our Constitution.

II. Even if private banks are not corporations they are included in the term "every bank and banking company" as used in §6, Art. XI of the Constitution.

We shall first consider the proposition that the Bank of Tocsin is a corporate entity by force of the Act of 1907.

It is clear from the provisions of the Act of 1907 that there is no expressed legislative intent to transform private banks into banking corporations. Not only

is there failure to use any apt words to indicate the creation of a legal entity to own and carry on the business of banking, but, to the contrary, the act contains definite provisions which force the conclusion that the persons associating themselves are the owners of the assets of the business and carry it on through managing agents. We call attention to the following:

(1) The title is "An Act to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons."

(2) Section 1 provides that "every partnership, firm or individual *transacting a banking business*" shall be subject to the provisions of the act. This clearly indicates that the "banking business" is to be transacted by a "partnership, firm or individual" and not by a corporation.

(3) Section 3 provides that *every partnership, firm or individual* desiring to transact a banking business shall file with the auditor of state a copy of the Articles of Copartnership and agreement if the "bank is being, or is to be conducted" under a copartnership; and if the business "is being or is to be transacted or carried on by an individual such individual shall at all times, while in such banking business, be a resident of the State of Indiana."

(4) Section 5 requires the state auditor to issue "to such partnership, firm or individual a certificate authorizing such partnership, firm or individual to transact a banking business."

(5) Section 6 requires the posting in the room of every bank doing business under the provisions of this act and "in plain view of the customers, a printed list of the owners of, and parties interested in, such bank, and the statement that this is a private bank."

(6) Section 7 requires "every partnership, firm or individual transacting a banking business under the pro-

visions of this act" to make reports to the state auditor; and to publish reports according to a form, "which form shall be as nearly as possible like that now or hereafter to be required of banks incorporated under the laws of Indiana."

We cannot find in the foregoing any indication of a legislative intent to create an artificial legal person, or entity, standing between the natural legal persons who own and transact the business. It is true that §12 provides that "any bank organized and doing business under the provisions of this act shall have the right to sue, and to be sued, under the name under which such bank is authorized to transact business;" but this merely authorizes suit for or against the owners of the banking business under the partnership name. That this must be true is shown by the further provision "that any judgment obtained against such bank shall be valid and binding against all the persons interested therein." The foregoing does not require the individuals interested in the bank to pay a judgment against the bank as a corporation; but the judgment is "valid and binding against all the persons interested therein."

Appellants attach special significance to the issuance of certificates of stock to the owners of the bank. But the wording of §4 indicates that such certificates are not issued by a corporate entity as stock of the corporate entity. The section reads as follows:

"Each individual, partnership or firm desiring to transact a banking business in this state shall issue certificates of stock to the respective individual or individuals forming said partnership in an amount equal to the capital of said bank, which certificates of stock shall be deemed and considered the capital stock of such bank . . . ."

The primary purpose of §4 is to fix definitely and formally the amount of capital which will be used in the business. It supplements paragraph 4 of §3 which

requires the filing of a statement "of the amount of capital paid into the business and to be kept and maintained at all times in the business." The certificates of stock merely represent the sum which the "respective individual or individuals" contribute for the purpose of creating the capital with which to commence and carry on the business.[1] While the term "certificate of stock" suggests the interest of a stockholder in a corporation it may be applied to the "share" or interest of a partner in the partnership capital.[2]

The provisions in the Act of 1907 which make possible transferability of interest in a private bank do not create a continuing legal entity. They merely avoid a winding up of the partnership business at the pleasure of a partner or by reason of death. Strictly speaking the partnership is dissolved each time a partner dies or disposes of his interest.

In considering the questions raised by this appeal we have recognized the elementary rule that only the General Assembly can create an artificial legal person. Further we recognize that the General Assembly can modify the rules of law governing Common law partnership without creating a legal entity. (Even at common law partners could obtain for the partnership business some corporate advantages by

---

[1] By the capital of a partnership is meant the aggregate of the sums contributed by its members for the purpose of commencing or carrying on the partnership business, and intended to be risked by them in that business. . . . The amount of each partner's capital ought, therefore, always to be accurately stated, in order to avoid disputes of a final adjustment of account; and this is more important where the capital of the partners are equal, for if there is no evidence as to the amounts contributed by them the shares of the whole assets will be treated as equal. . . ." Lindley on Partnership, 7 Ed., p. 407.

[2] "There may be shares of stock and stockholders in a partnership as well as in a corporated body. Such in fact was the organization of the Peoples Bank. Lindley's very elaborate work is designed mainly to explain the law of partnership as applicable to stock companies not incorporated." Uhl v. Harvey (1881) 78 Ind. 26, 38.

means of the copartnership agreement.)  The result may
be to give to business associates some of the advantages
of incorporation; but it does not follow that courts can
treat such a business association as a corporate entity
for the purpose of conferring upon it all the other ad-
vantages of incorporation.  Courts may find a legislative
intent to create a corporation in the fact that business
associates are invested with all the attributes of a legal
person; and if such intent is manifest it is the duty of
the courts to treat such an association as a corporation.
On the other hand the General Assembly has the power
to create a legal entity and withhold from it some of the
corporate advantages.  For example it is not uncommon
to impose unlimited liability upon stockholders for the
debts of the corporation.  Although this, in practical
effect, imposes the financial responsibility of a partner
the corporate entity is not destroyed and the legal ob-
ligation of the individual stockholder is to pay the debt
of the corporation rather than his own.

But the ultimate judicial inquiry is whether the legis-
lative intent is to create a legal individuality apart from,
and legally independent of, the natural persons who
are interested in the enterprise in question.  If an entity
with legal individuality is created it follows that this
legal person possesses the ordinary corporate advan-
tages, unless some appropriate legislative action ex-
pressly provides otherwise.  On the other hand if a legal
individuality is not created by the statutes which affects
the conduct of the enterprise in question then the nat-
ural persons interested in the enterprise incur all the
obligations and liabilities of common law partners, ex-
cept insofar as these are limited by statute or enforce-
able contracts.

We have pointed out (*supra*, p. 103) that the Act of
1907 does not purport to create corporations to conduct
a banking business under the terms of the act; but on

the contrary, expressly declares its purpose to be "to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons." Further, we cannot imply a legislative intent to create banking corporations from the provisions of the act which give to "individuals, partnerships or unincorporated persons" engaged in the banking business certain business advantages which are enjoyed by corporations in face of the provisions which clearly recognize the unlimited financial liability of the owners of the banking business for the obligations of the bank. Section 12 authorizes the bank to sue or be sued "under the name under which such bank is authorized to transact its business" and then leaves no question that the suit is by or against, the individual owner, or owners, under the business name of the bank by providing that "any judgment obtained against any such bank shall be valid and binding against all the persons interested therein." It is clear from §11 that the legislative intent was to treat the owners of a private bank as partners as respects debts of the bank. This section[3] gives depositors a first lien on the assets of the bank and then expressly provides that for any balance the depositors shall share in the general assets of the "owner or owners, alike, with general creditors."

We conclude that the Act of 1907 "to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons" does not create banking corporations although the effect of some of the provisions therein is to give to partnerships some of the legal advantages which corporations enjoy. A private bank owned by "individuals,

[3] Sec. 11. "The depositors in any such bank shall have a first lien on the assets of such bank in case it is wound up, to the amount of their several deposits. And for any balance remaining unpaid, such depositors shall share in the general assets of the owner or owners, alike, with general creditors."

partnerships or unincorporated persons" and organized and conducted in accordance with the provisions of the Act of 1907 corresponds closely to the type of business organization known as a joint stock company, which is a "species of partnership."[4]

Appellants' further contention is that the Bank of Tocsin comes within the meaning of the term "corporations" as used in the heading of Art. XI of the Constitution of Indiana and that the use of the phrase "any bank or banking company" in diffent sections of Art. XI indicates an intention to give a broader meaning to "corporations" than the meaning of *corporate entity* in the strict sense. There is no rule of law, superior to the provisions of our Constitution, which requires the title of an article of the Constitution to express the contents of the article. Consequently, although the title of Article XI is "Corporations" we must apply its provisions to other forms of business organization if the content of the article so requires. We are convinced, however, that §6, Art. XI, applies only to corporations. That this was the understanding of the Convention is indicated by many comments of members of the Constitutional Convention, but especially by the discussion on Mr. Owen's proposal to impose upon stockholders in all corporations an individual liability "to an

---

[4] "If unincorporated associates agree (1) that their interests in a business to be conducted for their benefit shall be represented exclusively by transferable shares, (2) that the title to some or all of the assets to be employed in the business shall be vested in persons who shall be trustees for all the associates, (3) that, ordinarily, the powers of management of the business shall be vested in the persons who are to be trustees of the assets, but also agree (4) that the associates, in meeting assembled, may at any time give instructions to these persons as to how the business is to be conducted, all courts would agree that the organization is a joint-stock company. A joint-stock company, although not an ordinary partnership, is a species of partnership; the members are partners; and the rules of partnership law are applicable except to the extent that they have been effectively modified by agreements." Warren's Corporate Advantages Without Incorporation, p. 327.

amount over and above their stock, equal to their respective shares of stock, for all debts or liabilities of the corporation." The following excerpts from the discussion upon the foregoing are quite in point:

"The convention will recollect that we have already passed a provision with reference to banks similar to that which my amendment proposes to insert in this section; that each stockholder shall be liable, in addition to his share of stock, for an amount equal to that share. I think we ought to put all corporations upon the same footing. If we prescribe this rule for the government of banks, it seems right that we should also prescribe it for the government of corporations generally." Owens, p. 1876, Vol. II, Debates in Indiana Constitutional Convention.

"It is said that partners are liable, indefinitely, for all the debts of the firm. But a partnership is one thing and a corporation is entirely another, and is designed to accomplish objects which are beyond the reach of partnerships. . . . The conditions upon which corporations are organized are understood by the public. No man is compelled to give them credit. . . . With banks it is otherwise. Bank paper circulates as money and men are all but compelled to receive and pay it out. We have very properly guarded banks against failure, but this section proposes to impose severer restrictions upon corporations organized for other purposes— upon plank roads, than upon banks." Newman, p. 1877, *supra*.

"You have adopted the principle of liability for banks in the amount of the stock. This is better than heretofore. It is something gained upon the 'divine rights' of such institutions in behalf of common justice. . . .

"My chief object in rising was to say that in regard to other corporations designed for improving the country, for the promotion of education, for other great objects of common interest, I am willing to commit the amount of personal liability and the mode of enforcing it to the Legislature, to be adapted to each particular class of corporations." Read, p. 1879, *supra*.

It is evident that there was no sentiment in the Convention in favor of reducing liability of those engaged in any banking functions. The only difference of opinion on the question of liability was to what extent personal liability should be imposed where it had not existed. Many members of the Constitutional Convention wanted to take away entirely the non-liability of stockholders of corporations, and especially of stockholders of banking corporations and impose unlimited liability[5] upon stockholders. The evils which the members wished to remedy were connected with the privilege of issuing paper currency and the exemption of stockholders from personal liability. These evils were a fluctuating and depreciated currency and inability of insolvent banks to pay off their bill holders and other creditors, including depositors. The members of the Convention understood that exemption from personal liability for debts of a banking company existed only when the company was a corporation. It seems that the members assumed that a state bank with branches, which alone could be established by special charter, must be a corporation, the stockholders of which would be exempt from personal liability unless such liability should be specially imposed. Consequently we are convinced that the members of the Constitutional Convention understood that "bank or banking company," as used in §6, Art. XI, included only (1) a bank with branches to be incorporated by special charter and (2)

---

[5] "If, then, Mr. President, the object is to furnish a safe and sound medium, let us compel the banker to stand at the back of his bank and back it up with his property as long as he has a single dollar to back it with." Kelso, p. 1638, Debates, etc. supra.

"If, then, gentlemen of wealth and integrity chose to go into banking, and to take rogues into partnership with them, let them stand the brunt of it. I do think that this principle ought to prevail. In regard to depositors, I have no objection to the section as reported by the committee. But whenever you come to the issue, I think they ought to be responsible to the full amount of their property." Borden, p. 1639, Debates, etc., supra.

"free banks" to be incorporated under a general law.

We recognize that the debates of members of a constitutional convention "can not be resorted to for the purpose of qualifying or changing the meaning of constitutional provisions" but "they (the debates of members) may be said to be of importance where they tend to support a construction which its (a constitution's) own language or terms would indicate." (In re Denny [1901], 156 Ind. 104, 153, 59 N. E. 359). But we shall later point out that the language of Article XI indicates a construction which gives effect to the understanding of the members of the Constitutional Convention.

The statements in the opinions of this court which were made within a few years after the adoption of the Constitution and which relate to the construction of the provisions of Art. XI are entitled to great weight, apart from their judicial authority. One of these cases was *Davis* v. *McAlphine,* 10 Ind. 137 which was decided in May, 1858. McAlpine sued Davis upon a promissory note "payable at the Citizens' Bank at Richmond, Indiana." Defendant's defense rested upon the validity of his contention that the note was not negotiable as an inland bill of exchange for the reason that the Citizens Bank at Richmond, Indiana, was "an unincorporated business house" and was not a bank within the meaning the statute which made promissory "notes payable to order or bearer, in a bank in this state" negotiable as bills of exchange. The Citizens' Bank was carrying on all the ordinary activities of a bank of discount and deposit but was not "established" by the General Assembly under a special charter nor organized under the then existing general banking law. The opinion of this court states that "the only point of difficulty in the case, and the one upon which it turns, is, did the legislature in using the word *bank* in the Code of 1852, mean char-

tered bank?" Apparently this court was assuming that *chartered* bank was synonymous with incorporated bank since the gist of the answer was that the Citizens' Bank was an unincorporated bank of discount and deposit. The following excerpts from the opinion of the court (p. 139) reveal the reasoning:

> "Charters are not requisite to banks of deposit and discount. Charters seem only requisite for conferring special privileges: as, to exempt the owners of the banks from personal liability for debts; to enable them to issue paper currency, etc. . . .
>
> "From this hasty review we learn very distinctly that the term *bank* does not necessarily refer to a chartered institution; though it includes all such, and is used in our own constitution simply in reference to that class of banks. . . . But in later years they (private banks of discount and deposit) have become numerous, and are discharging a large portion of the banking business. The public attention has been attracted to them, and the relative advantages and disadvantages of private and chartered banks have been largely discussed, and the public mind has been, and is, divided upon the question of their claims to public favor. Under these circumstances, we incline to the opinion that the legislature, by the code of 1852, designed to put these two classes of banks on an equal footing in the particular specified."

We think the fair import of the opinion in *Davis* v. *McAlpine, supra,* is as follows:

> (1) The term *bank* as used in the Constitution referred to a "chartered institution."
>
> (2) Charters are not requisite to banks of deposit and discount.
>
> (3) By "chartered" the court meant incorporated, either by force of a special charter in case of a bank with branches or by force of the general banking law.[6]

---

[6] "The general banking law, under which the Wabash Valley Bank was organized, and which is, therefore, its charter, contains these sections:" (here follow sections of the general banking law) Wright v. Field (1856), 7 Ind. 376. Further on in the opinion this court refers to *Bogardus* v. *The Rosendale Mfg. Co.*

During the November term of 1858 this court decided the appeal in the case of *Brown* v. *Killian*, 11 Ind. 449. One of the questions involved in that case was the legality of certain notes which were "in the exact similitude of bank notes" and which had been issued by the "Citizens Bank of Gosport." This bank had been organized "by an association of individuals for the purpose of doing a general banking business, including the issuing of notes to circulate as money." This court concluded that the Constitution "prohibits all banking, *by way of issuing* bills, except in the mode prescribed by statute;" and that "no bank of issue can be established in this state under our present Constitution except a state bank, and free or private banks pursuant to the provisions of the general banking law." It is clear that this court did not hold (as insisted by appellants) that the Constitution prevents "the establishment of any banks, whether corporations or not, except under a general banking law." (Appellants' brief, p. 81). The holding in *Brown* v. *Killian* that "no bank of issue can be established in this state under our present Constitution except a state bank and free or private banks pursuant to the provisions of the general banking law" is in harmony with *Davis* v. *McAlphine*. The opinion in the latter case expressly declared that banks of deposit and discount need not be chartered, and in the opinion in *Brown* v. *Killian* there is no mention of banks of deposit and discount in the statement that the Constitution "prohibits all banking, by way of issuing bills, except in the mode prescribed by statute;" nor in the conclusion that "no bank of issue can be established in this state under our present Constitution, except a state

(4 Sanaf. R. 89; 3 Selden (N. Y.) R. 147). The corporation involved in that case was organized under a general law. Our court remarks:

"The charter in question in that suit differed somewhat from our free bank law, . . ."

bank, and free or private banks pursuant to the provisions of the general banking law."

It is true as stated in the brief of appellants that this court, in the case of *Gaiser* v. *Buck* (1931), 203 Ind. 9, 174 N. E. 83, 179 N. E. 1, "has held that the word bank as used in the Constitution includes banks of discount as well as banks of issue." (Appellants' Brief, p. 82). In *Gaiser* v. *Buck, supra,* however, the specific question presented and decided by this court was whether a banking corporation doing a business of discount and deposit was included in the term "any bank or banking company" as used in §6, Art. XI. There was no question in that case as to the extent of the liability of an individual or of partners who were engaged in a banking business. That case simply decided that the stockholders of a corporation which is engaged in a banking business are subject to the constitutional liability even though the banking business consists only of discount and deposit. There is no conflict between that holding and the present holding that "bank or banking company" as used in §6, Art. XI, includes only corporations engaged in the banking business.

We have previously stated that the subject matter of an article of our Constitution need not be limited to the subject expressed in the title of the article, still we think that the provisions should be presumed to relate to the subject matter as expressed in the title unless the context indicates the contrary. We do not think that the phrase "stockholders in every bank or banking company" can be said to indicate an intention of extending the scope of §6 to include unincorporated associations, since the term "company" could properly designate a corporation. At the time of the adoption of the Constitution the terms "company" and "corporation" were

used interchangeably. We find that "company" is used in legislative enactments when it obviously means corporation. The title of an act "approved March 3, 1855," is "An act to amend . . . 'An act to incorporate the Lagro, Marion and Jonesboro Plank Road Company,'" and the term "Company" is used in the body of the act. An act which was approved March 1, 1855, with the title "An act in relation to Plank, McAdamized, Tram and Gravel Road Companies uses the term "corporations" throughout the body of the act. Also, the title of another act was "An act to authorize the formation of voluntary associations," approved January 27, 1847, yet the body of the act provides for the creation of corporations.[7]

It is clear that "banking company" did not at the time of the adoption of our present Constitution, and does not now, connote an unincorporated body to the exclusion of a corporate body.

That §6 of Art. XI refers only to banking corporations is emphasized by §14 of Art. XI, which reads that "dues from corporations, other than banking, shall be secured," etc.

It is clear from the foregoing that the language of pertinent sections of Art. XI indicates that "any bank or banking company" includes only banking corporations, a construction which carries out the understanding of the members of the Convention and a construction which was recognized and adopted by this court in *Davis* v. *McAlpine* and *Brown* v. *Killian, supra.*

We hold that the Bank of Tocsin is an unincorpor-

[7] In the case of Harris v. The Muskingum Mfg. Co. (1836), 4 Blackf. 267, it was objected that "the declaration ought to have averred that the plaintiffs were a corporation." But this court said that "the name itself (The Muskingum Manufacturing Company) implies that the plaintiffs are a corporation."

ated association and that liability of the owners thereof is not affected by §6 of Art. XI of the Constitution of Indiana.

Each of the assigned errors presents the same question on appeal and our reasoning and conclusions compel us to hold that the trial court did not commit error either in its rulings on the demurrers or in its conclusions of law.

Cross errors were assigned by the appellee. This action was brought by Grover Essner for himself and for all others similarly situated as depositors of the Bank of Tocsin. Upon the trial the court excluded evidence of claims of depositors other than Grover Essner, the theory of the court apparently being that Essner could not maintain the action in his representative capacity for other depositors. Appellee filed a motion for a new trial based upon the alleged erroneous exclusion of such evidence. The overruling of the motion for a new trial is assigned as cross error. The question as to whether a depositing creditor can bring an action for himself and on behalf of others similarly situated was decided by this court in *Gaiser* v. *Buck, supra,* in accordance with the contention of appellee here. The trial court should have sustained appellee's motion for a new trial for the purpose of hearing evidence and determining the rights of others situated similarly to appellee.

The judgment of the Wells Circuit Court is reversed with instructions to sustain appellee's motion for a new trial and for further proceedings not inconsistent with this opinion.

Myers, J., concurs in part and dissents in part.

Hughes, J., not participating.