### HOFFMAN ET AL. V. ROMACK ET AL.

[No. 26,875. Filed June 8, 1937. Rehearing denied September 20, 1937.]

13. *Kenwood Tire Co.* v. *Speckman* (1931), 92 Ind. App. 419, 176 N. E. 29.

422

*Albert Ward,* and *Fred E. Shick,* for appellants.

*Charles Tindall,* and *Cloe, Campbell, Cloe & Cloe,* for appellees.

TREMAIN, J. —This action was transferred to this court from the Appellate Court on the 24th day of May, 1937, pursuant to Section 4-209 Burns Ind. St. 1933, section 1364 Baldwin's Ind. St. 1934, which provides that:

"Whenever, upon the determination of any appeal, it shall appear that the three (3) judges of

the division do not concur in the result, the case shall be submitted to and be decided by the entire Appellate Court, and, in that case, if four (4) judges shall not concur in the result, the case shall be transferred to the Supreme Court."

This is an appeal from the judgment of the Hamilton Circuit Court entered April 15, 1936, in favor of the appellees, in which the appellants were enjoined from levying execution on the property of the appellees to satisfy a judgment of $146,324.50, rendered by the Tipton Circuit Court on April 2, 1934, against the appellees and in favor of appellants. This action was filed in the Tipton Circuit Court and sent to the Hamilton Circuit Court on change of venue. The appellants' demurrer to the appellees' complaint for want of facts was overruled, and the issues were closed by a general denial. The cause was submitted to the court for trial without a jury, and, upon request, the court found the facts specially and stated its conclusions of law thereon. No oral testimony was introduced at the trial, but the parties stipulated the facts in relation to the issues as joined in the form of special findings.

The court adopted as its own the findings stipulated by the parties, the substance of which is as follows: That on the 15th day of April, 1933, and continuously for a long time prior thereto, the appellees, together with other parties, were the sole owners of all the capital stock of a private bank organized, operating and existing pursuant to Chapter 113 of the Acts of the General Assembly of 1907, Sections 18-2701 to 18-2714 Burns Ind. St. 1933, Sections 8028 et seq. Baldwin's Ind. St. 1934. This is an act to regulate and supervise the business of banking by individuals, partnerships, or unincorporated persons. The bank was organized and known as the Sharpsville Bank with its place of business located in the town of Sharpsville, Tipton County, In-

diana. On that date the appellees, James L. Romack, Charles A. Rose, Clifford W. Lee, Lot E. Warner, Ludie Warner, William A. Parks, Benjamin H. Rockey, Maurice Warner, Samuel Warner, Edgar F. Warden, and Edrite Parks, were the sole owners and stockholders of the Sharpsville Bank, and pursuant to the statute filed a petition in the Tipton Circuit Court avering that they were the holders of more than eighty per cent of the capital stock of the Sharpsville Bank. That it was a private bank under the laws of the state and asked the court to authorize it to go into voluntary liquidation and that a trustee be appointed to liquidate the assets of the bank. The petitioner alleged that they had set apart sufficient assets to pay its depositors in full, as provided by Section 15 of said Chapter 113, Acts 1907, and filed a schedule of such assets with the petition.

Upon this petition the court entered an order permitting the voluntary liquidation of the bank and appointed one of the owners, Lot E. Warner, as trustee to administer the assets. He qualified and assumed the duties of his trust. On May 6, 1935, and December 21, 1935, pursuant to the approval of court, said trustee paid dividends to the depositors in the total sum of $23,350, and held other assets belonging to the trust not exceeding in value $55,000.

The court further, found, as stipulated, that on the 22nd day of November, 1933, these appellants, Andrew Hoffman and others, as plaintiffs in an action that day filed for and on behalf of themselves and all other depositors of the Sharpsville Bank who were then united in interest, obtained leave of the Tipton Circuit Court to file and did file their complaint against the Sharpsville Bank and the stockholders thereof as named above. That complaint alleged that said named stockholders were the sole and only stockholders and owners of the Sharpsville Bank; that the bank was duly authorized by

law to conduct and carry on the business of a private banking institution in the town of Sharpsville, and had been so engaged for many years; that the plaintiffs in that action, appellants here, were depositors of said bank at the time of the filing of the petition for voluntary liquidation on April 15, 1933; that there were more than one hundred depositors at that time; that the aggregate of the amount of deposits was in excess of $158,000. The names and amounts of deposit of each depositor were designated in the complaint. It was alleged that they were entitled to have a first lien upon the assets of the bank to the amount of their several respective deposits therein, and further they were entitled to share in the general assets of the separate and several defendants (appellees here) in said cause of action as owners of said bank, alike with general creditors, and were entitled to an accounting against the Sharpsville Bank and against each and all of the defendants in that cause of action. It was alleged in that complaint that by joining each and all of such depositors therein, and by bringing and prosecuting the action for and on behalf of each and all, much litigation and a multiplicity of suits would be prevented.

The complaint asked the court to fix and adjudge the amount due to each of the depositors, and declare the several amounts due to be first liens on the assets of the bank. Summons was issued to each of the defendants in that action. They appeared and filed answers in general denial. That action was tried in the Tipton Circuit Court April 2, 1934, in which a judgment was rendered for the plaintiffs, depositors of the Sharpsville Bank, as of date of voluntary liquidation, in the sum of $146,-324.50, which sum was properly allocated to the respective depositors of said date, declared a first lien on the assets of the bank to the full amount of the several deposits, and for any balance remaining unpaid, said de-

positors should share with the general creditors in the assets of the defendants, James L. Romack and others.

A stipulation of the special findings contained a copy of the judgment rendered in that case.

By finding Number 9, the court determined that after deductions of set-offs and credits, there remained due to the appellants herein the sum of $133,350. It was found that the appellees herein, who were defendants in the first action referred to, appealed to the Appellate Court from the judgment rendered against them, and a transcript was filed in the Appelate Court on November 1, 1934. Error was assigned upon the overruling of a demurrer to the complaint. That appellants in that appeal, being the plaintiffs in this action, filed no appeal bond, and the Appellate Court dismissed the appeal February 9, 1935. After the appeal in that case had been filed in the Appellate Court, Andrew Hoffman and others, who recovered the original judgment for the benefit of the depositors, caused executions to be issued upon the judgment to the sheriffs of both Tipton and Madison counties, to be levied upon the property of the judgment defendants, the stockholders and owners of the Sharpsville Bank.

The court found that the intangible tax upon the original judgment was not paid until February 15, 1935.

Finally, the court found that unless enjoined from so doing, the defendants (appellants) will proceed to levy the executions upon the property of the plaintiffs and sell the same for the purpose of satisfying the judgment; that such levy and sale would cause the plaintiffs (appellees) substantial and irreparable damage and injury.

Upon these facts the court concluded that the law was with the plaintiffs (appellees) ; that the plaintiffs be decreed an injunction against the defendants, enjoining the collection of the judgment described in plaintiffs'

complaint, and enjoining any acts taken for the purpose of collecting said judgment, or any part thereof, until the assets of the Sharpsville Bank have been fully exhausted and applied to the payment of the judgment, and the balance, if any, remaining unpaid be ascertained and rendered certain; that the executions issued to the sheriffs be quashed.

The appellants excepted to each of the conclusions of law, and filed a motion for a new trial, which was overruled. Final judgment was entered in favor of appellees.

The question before this court can be determined upon the single proposition as to whether or not upon the facts specially found by the court, judgment should be rendered in favor of the appellants or the appellees.

It is well settled by the decisions of this court that Chapter 113 of the Acts of 1907 did not create a new banking corporation, but was intended to and did regulate banking business conducted by "individuals, partnerships, and unincorporated persons." The banking business conducted pursuant to said Act amounts to nothing more than a common law partnership among the owners of the stock in the bank. *Hall et al.* v. *Essner et al* (1935), 208 Ind. 99, 193 N. E. 86; *Drudge* v. *Citizens' Bank of Akron* (1935), 209 Ind. 638, 196 N. E. 111; *Borgman* v. *State* (1937), 211 Ind. 395, 5 N. E. (2d) 522; *Lindley* v. *Seward* (1937), 103 Ind. App. 600, 5 N. E. (2d) 998.

The owners of all the stock in the Sharpsville Bank were partners and were liable as principals. As members of the partnership they were jointly and severally liable for all of the indebtedness of the bank. Section 12 of said Chapter 113 provides that "any judgment obtained against such bank shall be valid and binding against all the persons interested therein." The judgment rendered in favor of the de-

positors was against the Sharpsville Bank and the owners of all the stock, naming them. No one of the defendants in that action stood in a more favorable relation to the judgment than the other. Each was severally liable. Any one could have satisfied the judgment and demanded and recovered a contribution from his co-partners.

The finding of the court clearly established that the Sharpsville Bank was a private bank; that the owners (stockholders) operated the same until April 15, 1933, when they placed it in voluntary liquidation, as provided by Section 15 of the Act; that one of the partners, Lot E. Warner, was appointed trustee; that after his appointment he paid to the depositors the sum of $23,-350 to be credited on deposits which aggregated $146,-324.50. After the payment was made, the findings of the court disclose that there remained in his hands assets not exceeding the sum of $55,000. A credit of $23,350 and certain set-offs allowed by the court upon the judgment left a balance of $123,387.75. Subtract from that the possible sum of $55,000 in the hands of the trustee, and there would remain approximately $68,000 due to depositors, which in any event the stockholders, partners, would be required to satisfy.

The appellees admit that the judgment taken against them and the Sharpsville Bank for $146,324.50 is a valid judgment. They attempted to appeal to the Appellate Court, but did not perfect the appeal. The special findings show that executions were issued upon a judgment for the payment of which each of the owners of the Sharpsville Bank was primarily liable. The appellees, at the time the judgment was rendered against them, if cause of stay existed, could have asked for and obtained a stay of execution upon that judgment. They did not choose to do this, but filed a separate and independent action to enjoin the levy of

the execution issued upon an admittedly valid judgment. The suit was not filed to set aside or vacate the original judgment upon the ground of fraud, surprise, excusable neglect, or any other cause, but upon the sole ground that the executions were prematurely issued, and that the assets of the bank should be exhausted before a levy could be had upon the property of the individual partner.

It was held in *Davis, Sheriff* v. *Clements* (1897), 148 Ind. 605, 607, 47 N. E. 1056, that such proceeding amounted to a collateral attack upon the judgment. It is there said:

"It is settled law that a proceeding to enjoin the enforcement of a judgment or decree by execution or decretal order is a collateral attack upon the judgment, and cannot be maintained for mere errors or irregularities, but only by showing that the judgment or decree, or the part thereof, the enforcement of which is sought to be enjoined, is void."

In *Hart* v. *O'Rourke* (1898), 151 Ind. 205, 207, 51 N. E. 330, it is said:

"It is settled law in this State that a void judgment may be enjoined, but if the judgment is merely irregular or erroneous, though reversible on appeal, it is not subject to collateral attack, and cannot be enjoined."

See *Helms* v. *Bell* (1900), 155 Ind. 502, 504, 58 N. E. 707; *Lowe* v. *Board of Commissioners etc.* (1901), 156 Ind. 163, 167, 59 N. E. 466; *Chicago, etc., R. Co.* v. *Grantham* (1905), 165 Ind. 279, 289, 75 N. E. 265. The law does not warrant the procedure adopted by the appellees in this action.

There is no question involved in this appeal concerning the rights or claims of different classes of creditors. Appellees admit their liability. In this admission they are compelled also to admit the liability of

common law partners and are held to such accountability. *Hall et al.* v. *Essner et al., supra.*

However, appellees say that under Section 11 of the private banking act, being Section 18-2710 Burns Ind. St. 1933, and §8038 Baldwin's 1934, the appellants were required to exhaust the bank's assets before resorting to the individual partner's assets for the payment of the general debts. That section expressly gives depositors a lien upon the assets of the bank superior to the claim of general creditors. Prior to the enactment of that law, depositors did not have such right, but shared equally with other creditors of the bank. The statute provides that after the exhaustion of the assets of the bank, the depositors in common with other creditors shall share in the general assets of all of the owners of the bank. After providing for the lien of the depositors, that section provides:

> "And for any balance remaining unpaid, such depositors shall share in the general assets of the owner or owners, alike, with general creditors."

That provision of the statute was embodied in the complaint, the special findings of facts, and the judgment of the court. It is upon this provision that the appellees contend that they should not be called upon to satisfy appellants' indebtedness until all the assets of the Sharpsville Bank are first exhausted. If such construction should be placed upon the statute, it is clear that a great injury might be done to depositors whom the law undertakes to favor over other creditors by giving them a lien upon the assets of the bank. This lien is given to depositors in preference of other creditors, but other creditors are not involved in this action. The statute is not a statute of limitation upon depositors. It was enacted to broaden their rights and give them a lien which theretofore they did not have. It cannot be construed to mean that, in a case such as

the one under consideration, the partners in a private bank could file an *ex parte* petition in court and have one of their own members appointed a trustee, and then carry on the liquidation of the bank for many years, in the face of the fact that depositors had years before recovered judgment against the partners for the amount of their deposits.

The special findings clearly disclose that the bank's assets are at least $68,000 less than the amount of the deposits. The appellees would have the appellants to wait an indeterminate time in which that sum shall be paid, regardless of the partnership liability to pay the entire amount of the judgment at once. The special findings of the court, under the decisions of this state and the construction placed upon the private banking act of 1907, clearly disclose that the judgment should have been rendered in favor of the defendants, appellants here.

One other question is presented and discussed by the appellees, and that pertains to the payment of the intangible tax. The judgment was rendered April 2, 1934. An appeal to the Appellate Court was dismissed February 9, 1935. Appellants paid the intangible tax in the sum of $365.85 February 15, 1935. Appellees contend that the tax should have been paid within ten days from April 2, 1934. Section 64-901 Burns Ind. St. 1933, section 15899 Baldwin's 1934, of the intangible tax law provides that the intangible tax becomes applicable only to "final judgments from their date of finality." The judgment in question did not become a finality until it was dismissed in the Appellate Court. The intangible tax stamps were affixed to the judgment within ten days after dismissal. This was sufficient.

A new trial would be unavailing for the reason that

the parties stipulated the facts which constitute the court's special findings. It is therefore ordered that this cause be, and the same is, reversed, with instructions to the lower court to restate its conclusions of law in conformity to this opinion and render judgment in favor of the appellants.