SNYDER ET AL. *v.* MILLER ET AL.

[No. 27,244.  Filed October 23, 1939.  Rehearing denied November 28, 1939.]

*W. J. Sprow,* and *Ryan & Ryan,* for appellants.

*Harding & Harding,* for appellees.

TREMAIN, J.—This was an action by appellees against appellants to recover a balance due on a promissory

note, executed by the Peoples Banking Company to the Farmers & Merchants State Bank, both of Darlington, Montgomery County, Indiana. Issues were closed. A trial was had by the court. The court found the facts specially and stated its conclusions of law thereon, on which judgment was rendered for appellees. Exceptions were reserved and this appeal was perfected.

The special findings disclose that on the 8th day of April, 1930, said banks were operating in the town of Darlington; that the Peoples Banking Company was organized in 1891 as a co-partnership to engage in the banking business, and operated as a private bank; that the Farmers & Merchants State Bank was incorporated pursuant to the statute. Prior to that date there had been three banks operating in that town, but one of them voluntarily ceased to operate as a bank. Within a few years immediately preceding 1930 the economic conditions were such that it was not profitable for two banks to operate in that town. It had been suggested by the banking commissioner of Indiana that the banking facilities be reduced to one bank. On April 8, 1930, the Peoples Banking Company showed resources in the sum of $201,630; capital, surplus, and undivided profits of $24,300; deposits in the amount of $175,495, and other liabilities amounting to $1,831. The resources were carried on the bank's books at face value, but as a matter of fact there was a large amount of bad loans and securities, and it had been ordered to charge off enough of the bad assets to wipe out its surplus. Its capital was impaired below its par value, but the court found that the bank, as a segregated entity apart from the worth of its partners, was not regarded by the banking commissioner as insolvent, nor were the partners insolvent. The Farmers & Merchants State Bank

had no knowledge of the condition of the Peoples Banking Company, and did not know, nor did it have opportunity to inspect, its condition prior to April 8, 1930.

A meeting was had, among those present being John M. Woody, vice-president of the Peoples Banking Company and its largest stockholder, Lew W. Little, director and cashier thereof, a special bank examiner, Mr. Stump of the Elston Bank & Trust Company of Crawfordsville, and Thomas Barr, deputy banking commissioner. They discussed the feasibility of a trade whereby the Farmers & Merchants State Bank could be induced to assume the liabilities of the Peoples Banking Company. There was no threat or intention to close the Peoples Banking Company on the part of the bank commissioner, but it was understood that the owners of the bank would have to strengthen its capital if it proceeded in carrying on a banking business.

Under these circumstances the cashier of the Farmers & Merchants State Bank was called in, and it was explained to him that the Peoples Banking Company desired to go out of business, and, since he had theretofore indicated an interest in taking the Peoples Banking Company over, he had been called to discuss that matter. Thereupon, the cashier of the Farmers & Merchants State Bank agreed, subject to the approval of his board of directors, to pay the Peoples Banking Company $5,000 for the banking house, fixtures, and good will, and to assume all its deposit and debt liabilities upon the condition that the Peoples Banking Company execute a note for the full amount of the deposit liabilities which could be carried as an asset of the Farmers & Merchants State Bank, this note to be satisfactorily secured; and, further, that all the resources of the Peoples Banking Company should stand as collateral security for the payment of the note. The note was to bear interest at

7 per cent, provided for attorneys' fees, and was to be credited with the proceeds derived from the liquidation of the assets of the Peoples Banking Company from time to time as the amounts collected aggregated $500. The cashier of the Farmers & Merchants State Bank informed the representatives of the Peoples Banking Company and the bank commissioner that his bank would not execute a contract whereby it would be liable to suffer loss by reason of the transaction. The court found at that time the Peoples Banking Company and its several partners were worth in the aggregate $250,000. It was proposed that the proposition should be reduced to writing and that the Peoples Banking Company would salvage its assets and liquidate the same as promptly as possible. If any surplus remained after the payment of all deposits and debts, the same should be retained by the Peoples Banking Company. On the other hand, if the Peoples Banking Company did not salvage enough to pay such indebtedness, the Peoples Banking Company and its shareholders should furnish such balance.

Thereupon, a written contract was duly executed by the officers of the two banks reciting the foregoing facts in substance. This contract provided that the note to be executed by the Peoples Banking Company to the Farmers & Merchants State Bank should be for the full amount of all deposit liability. The shareholders of the Peoples Banking Company approved the contract and appointed a committee of two to represent them in all matters to be voted upon. At the same time the Peoples Banking Company, by its directors, executed the promissory note in the principal sum of $175,495.87 to the Farmers & Merchants State Bank, due six months after date conditioned as aforesaid. The amount of the note was the exact amount of the deposit liability as shown

by the books of the bank at the close of business on April 8th. Upon the execution of the note and contract, all of the tangible resources of the Peoples Banking Company, books, notes, and valuable papers, were transferred to the banking house of the Farmers & Merchants State Bank. No attempt was made by the Farmers & Merchants State Bank to appraise or put a value on the assets and the various items of the Peoples Banking Company or to investigate the same, but it accepted the note as executed by the Peoples Banking Company, together with the assets and the worth of the partners as security for its assumption of the liability.

Upon the closing of the Peoples Banking Company, the Farmers & Merchants State Bank employed John M. Woody, the vice-president and assistant cashier of the Peoples Banking Company, as a bookkeeper. This employment was no part of the contract between the two banks, but was a separate, independent, and later transaction between the Farmers & Merchants State Bank and Mr. Woody.

Following this transfer of property the officers of the Peoples Banking Company continued to function and act upon matters which required their attention. Mr. Woody, on account of his familiarity with the customers and the business of the Peoples Banking Company, took active charge of the liquidation of the assets of that bank. The first credits placed on the note above referred to were on April 9th, being a credit of $5,000, representing the value of the banking house, fixtures, and good will, and the cash resources of the Peoples Banking Company, the aggregate of these amounts being $45,495.87, which left the sum of $130,000 remaining due. The note was carried as an asset of the Farmers & Merchants State Bank. From time to time thereafter credits were placed thereon and renewal notes were

executed. The notes, accounts receivable, and assets of the Peoples Banking Company were not carried as assets of the Farmers & Merchants State Bank, but held only as collateral security for the note. Notes and credits which the Peoples Banking Company held were not endorsed or assigned to the Farmers & Merchants State Bank, but were carried in the name of the Peoples Banking Company until they were liquidated and the cash receipts credited upon said note.

On October 18, 1933, Woody voluntarily turned over to the Farmers & Merchants State Bank as collateral personal assets of the value of more than $13,000 "under a personal covenant with said bank that it would not pursue him personally in the collection of its obligation owing from Peoples Banking Company and its shareholders until in its judgment or as required by State Banking authorities it was necessary so to do." It was later agreed that the collateral surrendered by Mr. Woody to the Farmers & Merchants State Bank should be applied to the payment of the note, and the court found that the note was credited by said collaterals in the amount of $13,538. The face of the note was reduced until December 8, 1937, when the principal and interest due amounted to $58,992.14. The court found that the original note and all renewals thereof were executed by the proper officers and representatives voluntarily and pursuant to the original agreement, but some of the shareholders of the Peoples Banking Company became dissatisfied and refused to proceed with the liquidation of the assets. Thereupon, the Department of Financial Institutions asked the Farmers & Merchants State Bank to proceed to enforce the collection of the balance due on the note.

In March, 1934, the Farmers & Merchants State Bank was threatened with impairment by reason of an accu-

mulation of slow and doubtful assets, and was placed on a restricted basis by the Department of Financial Institutions. Concurrently therewith certain slow and doubtful assets of the Farmers & Merchants State Bank were segregated and set over to trustees named for that purpose. Included in these assets was the note of the Peoples Banking Company, which was delivered to the trustees by proper assignment without recourse. This action was commenced by the trustees for the use and benefit of the Farmers & Merchants State Bank. None of the co-partners of the Peoples Banking Company, with the exception of Woody, contributed any of their personal resources to the liquidation of the bank's obligation. Some of the partners of the Peoples Banking Company, since the execution of the original agreement, transferred their real estate and other assets to their wives or near relatives. The Department of Financial Institutions at no time took possession of the business or property of the Peoples Banking Company, and never closed or ordered the bank to be closed. No receiver was appointed and no dissolution of the bank was had.

Upon these facts the court found that the law was with the plaintiffs; that the plaintiffs had a right to maintain the action; that the covenants made with Mr. Woody did not release or have the effect of releasing any of the defendants in the cause other than Woody, and did not prejudice the plaintiffs' right to recover; that the plaintiffs were entitled to judgment, for principal, interest, and attorneys' fees, in the sum of $68,278.93. The appellants excepted to the conclusions of law separately and severally. Judgment was rendered thereon.

The appellants contend that the trustees of the Farmers & Merchants State Bank are not the proper parties to maintain this action against the defendants

as co-partners of the Peoples Banking Company. This contention is based upon the proposition that Chapter 40 of the Acts of 1933, Sec. 18-101 et seq., Burns' Ind. St. 1933, vests sole authority to maintain such action in the Department of Financial Institutions, and under the provisions of that act this court has held that the sole right to maintain the action is in the department. Their position is further based upon the proposition that the Peoples Banking Company is insolvent and in the process of liquidation by the department.

Waiving the question as to whether the appellants are entitled to present the matter to the consideration of this court, it must be pointed out: First, that the trial court found that the Peoples Banking Company was not insolvent; second, that the Department of Financial Institutions did not take over and assume the liquidation of the bank; and, third, that a contract was executed between the Farmers & Merchants State Bank and the Peoples Banking Company, whereby the Farmers & Merchants State Bank paid all depositors and creditors of the Peoples Banking Company, and to secure it in making these payments the Peoples Banking Company executed the note sued upon, with an agreement that all the assets of the bank should be reduced to cash and applied upon the payment of the note. The same officers of the Peoples Banking Company continued in control of the bank. Mr. Woody, a vice-president and director of the Peoples Banking Company, was selected to take active control of the Peoples Banking Company affairs and to liquidate its assets. The assets of the Peoples Banking Company were never carried upon the books of the Farmers & Merchants State Bank, but the note executed was carried as an asset. In addition, the court expressly found that the Department of Financial Institutions did not

take charge of the assets of the Peoples Banking Company and refused to file the action upon this note when requested to file it by the Farmers & Merchants State Bank, but directed that bank, through its trustees, to maintain its own action thereon. These findings furnish no basis for the claim that the suit was filed by the wrong party.

This is not such a case as *Todd* v. *Brock* (1938), 215 Ind. 639, 17 N. E. (2d) 467, and other authorities cited and relied upon by appellants. In those cases the bank in liquidation was insolvent and its affairs had been taken under the control of the Department of Financial Institutions. In the Todd case the department was the only one which could maintain the action under the Acts of 1933. In the case at bar the contract was executed by two banks, both able to pay its depositors and creditors. No necessity exists for making assessments or to enforce shareholders' liability. This action amounts to nothing more than a suit by one bank against another upon a note executed by the latter to the former. All the state banking department had to do in this matter was to approve the transaction as originally made in April, 1930.

The Peoples Banking Company was a private bank— a co-partnership. The provisions of the Indiana Constitution limiting liability of stockholders in any "bank or banking company" is not applicable to a private bank organized under the act regulating banking by "individuals, partnerships or unincorporated persons." The owners are liable as partners and not as stockholders in a banking corporation. *Hall et al.* v. *Essner et al.* (1935), 208 Ind. 99, 193 N. E. 86.

The appellees as assignees and trustees of the Farmers & Merchants State Bank were creditors of the Peoples

Banking Company and entitled to recover the balance due on the note. All other creditors had been satisfied. The appellants were jointly and severally liable for the payment of the note and were in no legal position to object to its payment. Any partner could have satisfied the debt and recovered contribution from the co-partners. *Hoffman* v. *Romack* (1937), 212 Ind. 421, 8 N. E. (2d) 831; Restatement of the Law, Contracts, Sec. 123.

The appellants insist that the agreement entered into by the Farmers & Merchants State Bank and John M. Woody had the effect to and did release all the defendants from liability; that the agreement was not a covenant not to sue but a full and complete release. Authorities are cited to support appellants' position. The quotation as stated above as part of the findings of the court clearly indicates the court's interpretation of the contracts between Woody and the Farmers & Merchants State Bank. The contracts were introduced in evidence and set out in the special findings. They recite the assumption of the liabilities of the Peoples Banking Company by the Farmers & Merchants State Bank, and the liability of Woody as a shareholder in the Peoples Banking Company to make good the remaining liabilities of the bank and the assignment and pledge of his own personal assets as collateral security. His personal assets turned over to the Farmers & Merchants State Bank consisted of a certificate of deposit of $12,600, shares of stock and notes of the cash value of $938. In consideration therefor the Farmers & Merchants State Bank agreed not to include Woody as a defendant in any suit brought upon the liability of the original shareholders until it was necessary to do so or was so required by the state banking authority.

This agreement was executed October 18, 1933. A supplemental agreement was executed in February, 1934, to the effect that Woody would not be required to contribute beyond the maximum of the securities, credits, and assets transferred and assigned by him to the bank until it was necessary for him to do so. It further recited that the Farmers & Merchants State Bank would be required to bring a suit against the shareholders of the Peoples Banking Company in order to enforce their liability and that it would be necessary that all shareholders be made defendants, and John M. Woody as a defendant may defend, default, or suffer judgment at his option, but no more shall be collected from him than the aggregate of the securities and assets theretofore turned over to the bank by him. This arrangement with Mr. Woody was more of a covenant not to sue than it was a release, and, in the event he was sued, he would not be liable for more than the value of the assets delivered by him to the bank. There appears to be no attempt to release him from the debt. The purpose and intention of the agreement was to pursue the shareholders of the Peoples Banking Company upon their liability. Restatement of the Law, Contracts, sec. 123, *supra; Aylesworth* v. *Brown* (1869), 31 Ind. 270; *Walls et al.* v. *Baird* (1883), 91 Ind. 429.

Mr. Woody turned his personal assets to the Farmers & Merchants State Bank for the benefit of all the partners of the Peoples Banking Company, and as a partial payment of the note. The co-partners received as much benefit proportionally as did Mr. Woody. The agreement between him and the bank sufficiently saved the right to prosecute an action for the benefit of the creditors against the other co-partners. "In general, the modern tendency is to construe instruments in the form of releases as covenants not to sue in order to

carry out the intention of the parties as appearing from the context and the surrounding circumstances." § 76, 53 C. J. 1253.

The special findings of the court sufficiently show that the contract of Woody amounted to a covenant not to sue. The special findings are supported throughout by the evidence introduced at the trial. It cannot be said on appeal that there is not some evidence to support each and every finding.

Having concluded that the appellees are the proper parties to maintain this action, and that the contract between the appellees and Mr. Woody was not a release but a covenant not to sue, other subordinate questions become of so little importance that the court would not be justified in discussing each one in detail. One of the exceptions to the judgment was that it included attorneys' fees for plaintiffs' attorneys, based upon the assumption that the note did not call for attorneys' fees. Both the record and the special findings disclose that the note and all renewals thereof provided for the payment of attorneys' fees.

After a consideration of the entire record, this court is unable to find any reversible error.

Judgment is affirmed.