DERWARD LOWS v. THOMAS W. WARFIELD.

[No. 370A37. Filed October 26, 1971. Rehearing denied November 23, 1971. Transfer denied January 12, 1972.]

*Denmure & Denmure,* of Aurora, *Cooper, Cooper, Cooper, Cox and Jacobs,* of Madison, for appellant.

*Wycoff & Greeman,* of Batesville, *Chester R. Callis,* of Vevay, for appellee.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS—This appeal arises from a summary judgment rendered against plaintiff-appellant, Derward Lows (Lows), who had brought an action for personal injuries against defendant-appellee, Thomas W. Warfield (Warfield) resulting from a three-car collision involving Lows, Warfield, and one Cleta Mae Cornett (Cornett).

According to the pleadings, affidavits, and depositions filed in this case, it appears Lows was driving his 1956 Chevrolet in an easterly direction away from the City of Aurora, Indiana, toward the City of Lawrenceburg on Highway 50 *on the night of October 6, 1961.* Highway 50 is a four-lane highway with a four-foot divider between the respective lanes. While entering a long, sweeping curve to his right, Lows observed an automobile driven by Cornett enter the curve going west on U.S. 50. When the Cornett car was approximately in the middle of the curve it crossed both the center strip and east-bound lanes and instead of striking the guardrail on the opposite side, the Cornett car continued down the lane that Lows was traveling. Lows saw the Cornett car coming toward him, and pulled off the edge of the berm as far as he could go. The Cornett car nevertheless hit Lows head-on. After this collision, the Cornett car was sitting at an angle with its rear end out in the road and Lows could see the rear taillight of the Cornett car.

From this point the evidence is conflicting. Lows contends that after some time had elapsed the Cornett woman attempted to free her auto from his, which resulted in four severe sessions of shaking, during one of which the front seat of the Lows car broke loose. It was at this point in time, he says, that his car was hit from the rear by Warfield's car.

Warfield and two other witnesses, however, claim that the

second collision between the Warfield car and the Lows car occurred within seconds of the initial collision between Lows and Cornett.

Prior to the closing of issues in this case, Lows made a settlement with Cornett and her insurer, the Vernon Insurance Company. In so doing, Lows signed the following document:

### "COVENANT NOT TO SUE

"I, Derward Lows . . . in consideration of . . . ($5600.00) . . . do by this instrument covenant with said Vernon Insurance Company on behalf of Cleta Mae Cornett to forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, hereafter to grow out of an accident which happened to Derward Lows on or about the 6th day of October 1961, at or near Wilson Creek Road on U.S. Highway No. 50 between Aurora and Lawrenceburg, Indiana whereby bodily injury was sustained and for the above consideration I hereby agree to hold the said Vernon Insurance Co. on behalf of Cleta Mae Cornett harmless from any damages to myself resulting or to result from said accident."

Lows filed his Complaint in Ripley County on *March 22, 1962,* and, after one change of venue by each party, the suit finally came to rest in the Switzerland Circuit Court.

Lows' Complaint among other things alleged that Warfield failed to keep a proper lookout for automobiles traveling in front of him; that Warfield failed to keep proper control of his car; that Warfield drove his car at an excessive speed under the circumstances; and that Warfield drove too close to the rear of Lows' car.

In his Answer, Warfield, besides making a general denial of the allegations, asserted the affirmative defenses that the document which Lows had signed releasing Cornett from liability constituted a general release which discharged Warfield from all liability as a joint tort-feasor with Cornett and

further that Lows had received full compensation for his losses.

Plaintiff, of course, replied to the contrary.

After the issues were closed, the parties entered into a pre-trial stipulation which reads as follows:

"1. That on the 26th day of January 1962, the plaintiff, Derward Lows executed the instrument, a copy of which is pleaded in rhetorical paragraph 3 of paragraph 3 of the defendant's answer and received as the consideration therefor, the sum of $5600.000.

"2. That the injuries for which the plaintiff prays damages in this cause are the injuries and damages described in said instrument so executed January 26, 1962 and no other, and are the same injuries set out in rhetorical paragraph 9 of plaintiff's complaint."

Based upon the stipulation made at pre-trial conference, Warfield filed a Motion for Judgment on the Pleadings contending that the instrument executed by Lows constituted a general release which released any claim Lows may have had against Warfield. The Switzerland Circuit Court overruled defendant's Motion for Judgment on the Pleadings.

Two weeks before this cause was *set for jury trial the third time, i.e., on November 15, 1967,* Warfield filed a Motion for Summary Judgment pursuant to Ind. Ann. Stat. § 2-2524 (Burns 1968) with eight exhibits attached along with authorities and arguments. Warfield again argued that the release signed by Lows was an unqualified general release. Secondly he argued that no issue of material fact existed and that, as a matter of law, Warfield could not have been guilty of any acts of negligence, and even if he was negligent, this was no proof that his negligence caused Lows' injuries.

The trial court did not act on Warfield's Motion for Summary Judgment *for two years.* On December 22, 1969, it sustained the Motion.[1]

---

1. The trial court's judgment is defective in two respects. First, it failed to specifically state that it found no material issue of fact to exist, and secondly, it failed to state with particularity its reasons for

Underscoring is used in this statement of facts as an expression of this court's disapproval of what appear to be unnecessary delays in bringing this case to trial. It is of such stuff that public disenchantment with the courts and lawyers is manufactured.

*ISSUES*—Only two issues are presented for review:

  I. Is the instrument signed by Lows a general release or merely a covenant not to sue?
  II. Do any material issues of fact exist which would defeat the granting of summary judgment?

As to issue I, Lows argues that the document signed by him did not operate as a general release because (1) the substance of the agreement does not contain words of general release; (2) the agreement is between Lows and the Vernon Insurance Company on behalf of Cornett only; (3) the trial court overruled Warfield's Motion for a Judgment on the Pleadings based on his argument that the covenant operated as a general release as to Warfield.

Warfield argues that the agreement signed by Lows does contain words of general release and, as such, he cannot as a matter of law be held liable.

As to issue II, Lows argues that there are material issues of fact, and specifically points to the conflict of testimony concerning the lapse of time between the original collision between Lows and Cornett and when the Warfield car struck Lows. Warfield, on the contrary, argues that Lows failed to offer any probative evidence in opposition to the Motion for Summary Judgment. Further, Warfield asserts that his Mo-

---

granting the summary judgment. *Singh* v. *Interstate Finance of Indiana,* (1969), 144 Ind. App. 444, 246 N.E.2d 776; *Harris* v. *Young Women's Christian Assn. of Terre Haute,* (1968) 250 Ind. 491, 237 N.E.2d 242; *Ware* v. *Waterman,* (1969), 146 Ind. App. 237, 253 N.E.2d 709; *Indianapolis Power & Light Co.* v. *Southeastern Supply Co.,* (1970), 146 Ind. App. 554, 257 N.E.2d 722. The procedure under 2-2524 *supra* has been to remand such judgments back to the trial court. We will not do so here, since the possible issues are few and easily ascertainable. For present requirements under Rule TR. 56, see Harvey's *Indiana Practice,* Vol. 3, p. 547.

tion shows that he was not guilty of negligence, and even if negligence existed Lows presented no evidence that he was injured by Warfield's actions.

## DECISION

*ISSUE I.* It is our opinion that the agreement signed by Lows was a "covenant not to sue" and not a general release.

■ In determining whether an agreement is a general release or a "covenant not to sue", the courts of this state have displayed two related trends:

First—instruments in the form of releases will be construed as "covenants not to sue" in order to carry out the intentions of the parties as they appear from the context and the surrounding circumstances. *Snyder et al.* v. *Miller et al.* (1939), 216 Ind. 143, 22 N. E. 2d 985; *Steeg and Associates, Inc.* v. *Rynearson* (1968), 143 Ind. App. 567, 241 N. E. 2d 888.

Second—the controlling factor is the *intention of the parties,* rather than the express provisions of the instrument itself. *Clapper* v. *Original Tractor Cab Co.,* (7th Cir. ■ 1959) 270 F. 2d 616; *Landers* v. *McComb Window and Door Co.* (1969), 145 Ind. App. 38, 248 N. E. 2d 358. The tenor of this "Covenant Not to Sue" is that of a promise by an injured party not to sue a tort-feasor for his injuries arising out of an accident occurring at a certain time and place in consideration of the receipt of a given amount of money. The usual language of a general release is not present—such words as "release", "discharge", "liability", "full satisfaction" are missing. Lows further indicated his intent by bringing suit against Warfield shortly after executing the Covenant Not to Sue.

Warfield argues that the title given to an instrument will not control its interpretation or determine its nature and cites 17-A C.J.S. *Contracts* § 294 to support this proposition. This section, however, goes on to state that substance rather

than form will control. And so it is here; the substance of the instrument is that of a covenant not to sue and its title is merely one of the factors indicating the intent of the parties.

Warfield also contends that Lows himself admitted that the instrument was a release in a party examination:

"Q. Have you filed any action against Mrs. Cornett?

A. She is released.

Q. You have no suit pending against her?

A. That's right."

This is testimony by a layman using a word of art. Note he made no mention of releasing his *claim* against Cornett. This is a critical distinction and is commented on in *Parry Mfg. Co.* v. *Crull* (1913), 56 Ind. App. 77, 82, 101 N. E. 756, as follows:

> "A distinction should be observed *between releasing a claim and releasing one of the parties liable.* If the injured party releases his claim for damages to one of the parties liable as a joint tort-feasor, he can not afterward assert it as against the others, but he may release one of the parties so liable without releasing the others." (Emphasis supplied.)

Warfield points to a leading Indiana case on the subject of releases, *Cleveland, etc., R. Co.* v. *Hilligoss* (1908), 171 Ind. 417, 86 N. E. 485, and argues that the language used in the Hilligoss release ("agrees to and does hereby receipt, release and forever discharge said traction company of and from any and all liability") is as strong as that used in the Lows instrument ("do by this instrument covenant with said Vernon Insurance Company . . . to forever refrain from instituting, pressing or in any way aiding any claim"). We cannot agree. The language in *Hilligoss* "discharges" and "releases" the traction company from "all liability". None of these terms are used in the Covenant Not to Sue before us.

Warfield also cites two other cases which he contends support his argument concerning the release.

In *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. 2d 875, the court held:

> "It is well settled that all joint tort-feasors liable for an injury are discharged by the *unqualified* release of one." (Warfield's emphasis.)

We do not disagree with the statement, but the emphasis should be on "release" rather than "unqualified". As we have indicated above, the intent of the parties here indicates the instrument was not signed as a general release.

Another assertion of Warfield should be considered. In his Answer he alleges that Lows had received full compensation, i.e., had received payment for his injuries.

In *Hilligoss, supra,* our Supreme Court distinguished release and satisfaction and held that:

> "[A] contract, which purports to be a satisfaction for the wrong, and a release of the wrongdoer, jointly liable with others, to be effective, *must clearly show that the injured party, for a consideration, has surrendered* to the party in whose favor the contract runs *all claim for recompense* for and on account of the trespass complained of. If it does so appear, there can be no further proceeding, for the right of action for the wrong is forever gone." (Emphasis supplied.)

The instrument signed by Lows refers in no way to the degree of satisfaction accomplished by the payment of $5600.00 to Lows. It does not clearly show that *all* claim for the accident has been satisfied. Whether this is full compensation for the injuries sustained is a question for the jury. As the court said in *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 609, 50 N. E. 2d 875, 879:

> "[I]t is equally well settled that a covenant not to sue one tort-feasor does not bar an action against the others, but only operates as a satisfaction of the damages, *pro tanto,* as to the benefits received. . . . And it may be added that

under an answer of full satisfaction by a joint tort-feasor a defendant is entitled to a *pro tanto* credit for anything less than full payment which the plaintiff has received from that source. *Whether the payment was in full or partial is for the jury to determine from the evidence.*" (Emphasis supplied.)

The question concerning the "satisfaction of damages" is therefore a material issue of fact, and we now consider whether additional material issues of fact exist which would also defeat the summary judgment.

*ISSUE II.* It is our opinion that material issues of fact concerning Warfield's negligence do exist.

Lows initially alleged in his Complaint that Warfield was negligent in that he: (a) failed to keep a proper lookout; (b) failed to keep proper control; (c) drove at excessive speed; and (d) drove too close to the rear of plaintiff's car.

Warfield contends that Low's response to the Motion for Summary Judgment is based entirely upon the four acts of alleged negligence, and thus fails to meet the requirements of a response to a Motion for Summary Judgment.

This is not true. First, Lows' responsive affidavit does present a material issue of fact concerning Warfield's proper control of his car. It is uncontroverted that the scene of the accident was a four-lane highway and that at the time of the collision Lows was on the right-hand berm of the road, thus leaving Warfield more than a lane and a half to avoid the accident. Because he did not avoid the collision raises a question as to Warfield's proper control of his car, and this question is raised in Lows' affidavit.

Warfield is mistaken in assuming that a failure of Lows to properly respond, or even to respond at all, is by itself justification for entry of a summary judgment in his favor. Our Supreme Court, in *Kapusta* v. *DePuy Mfg. Co., Inc.* (1968), 249 Ind. 679, 680, 234 N. E. 2d 487, answered this argument:

"After a review of the petition to transfer and of the Appellate Court decision, we are of the opinion that the Appellate Court reached a correct result and the petition to transfer should be denied. However, we cannot approve of the language in the opinion which states:

'In any event, appellant's failure to file counter-affidavits gave force to a prima facia [*sic*] showing that appellee, the moving party, was entitled to summary judgment as a matter of law.' 229 N. E. 2d at 832.

We believe this language is contrary to the statute, Ind. Anno. Stat. § 2-2524(e) (Supp. 1967):

'When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him.' (our emphasis)

"The language in the opinion seems to indicate that the trial court need not decide if there is a material issue of fact. Ind. Anno. Stat. § 2-2524(c) (Supp. 1967) provides:

'The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . .'

*We construe the words 'if appropriate' in subsection (e), in light of subsection (c) to still require a finding that there is no genuine issue as to any material fact, whether or not counter-affidavits are filed."*[3] (Emphasis supplied.)

There are other issues of fact in addition to the satisfaction of damages issue and the control issue.

Warfield and two other witnesses swore that the second collision involving the Warfield car occurred almost simultaneously with the collision between Lows and Cornett.

---

3. Ind. Ann. Stat. § 2-2524 was repealed January 1, 1970 and replaced by Rule TR. 56, which reads, in part, as follows: "Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the affidavits and testimony offered upon the matters placed in issue by the pleadings or such evidence."

Assuming this to be true, Lows' allegation that Warfield was following him too closely certainly creates a material issue of fact.

Warfield also argues that Lows has not shown his injuries were cause by Warfield—and thereby creates another material issue of fact.

We have held on more than one occasion that all doubts are to be resolved against the moving party where summary judgment is sought. *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215; *Newcomb* v. *Cassidy* (1969), 144 Ind. App. 315, 245 N. E. 2d 846; *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688. The several issues of material fact alluded to above are evident from the record. We need resolve no doubts as to their existence in this case; they are as easily distinguishable as "new snow on a raven's back."

The judgment of the trial court is therefore reversed with instructions to advance this cause on the trial docket to the earliest possible date.

Judgment reversed.

Sullivan, P. J., Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 553.

## ON MOTION TO DISMISS

PER CURIAM—The plaintiff-appellant instituted this cause of action in the Switzerland Circuit Court by filing therein a complaint for damages for personal injuries allegedly sustained by him as a result of the defendant-appellee's negligence. On December 22, 1969, pursuant to the appellee's motion therefor, the trial court entered a final summary judgment against the appellant. Thereafter on March 18, 1970, the appellant submitted his appeal by filing with the Clerk of this Court the transcript of the proceedings in the trial

court and an Assignment of Errors. Said Assignment of Errors is as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this cause, which is prejudicial to the appellant, in this:

"1. The Trial Court erred in sustaining the appellee's motion for summary judgment.

"2. The Trial Court erred in granting the appellee's motion for a summary judgment."

This cause is now before us on the Appellee's Motion To Dismiss Appeal, which alleges as cause therefor that no Motion to Correct Errors was filed in the trial court and no Motion to Correct Errors is contained in the transcript. In the Memorandum attached to his Motion to Dismiss Appeal, the appellee directs our attention to Trial Rule 59(G) and Appellate Rule 7.2(A)(1), which rules read as follows:

*Trial Rule* 59(G).

"(G) Motion to correct error a condition to appeal. In all cases in which a motion to correct errors is the appropriate procedure preliminary to an appeal, such motion shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing such motion. Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court. A motion to correct errors shall not be required in the case of appeals from interlocutory orders, orders appointing or refusing to appoint a receiver, and from orders in proceedings supplemental to execution."

*Appellate Rule* 7.2(A)

"(A) Definition. The record of the proceedings shall consist of the following documents:

"(1) A certified copy of the motion to correct errors or an assignment of errors.

"(a) In all appeals from a final judgment, a certified copy of the motion to correct errors filed with the trial court shall constitute for all purposes the assignment of

errors. No assignment of error other than the motion to correct errors shall be included in the record.

"(b) In all appeals from interlocutory orders, there shall be included instead of the certified copy of the motion to correct errors a specific assignment of the errors alleged."

The appellee contends that the summary judgment entered by the trial court was a *final* judgment because it completely disposed of the appellant's claim. With this contention we agree. *Jose* v. *Indiana National Bank, etc., et al.* (1966), 139 Ind. App. 272, 276, 218 N. E. 2d 165. Appellee further contends that Trial Rule 59(G) and Appellate Rule 7.2(A)(1), when read in conjunction, require the filing of a Motion to Correct Errors as a condition precedent to an appeal from the entry of a final summary judgment.

The problem presented by the appellee's Motion to Dismiss is not novel, as it previously plagued the bench and bar after the enactment of the summary judgment statute. (Burns' Indiana Statutes, Sec. 2-2524) (1968 Repl.). The exact question which arose after the enactment of this statute and before the adoption of the Indiana Rules of Procedure on January 1, 1970, was, whether a party should appeal directly from an adverse entry of summary judgment by assigning as error in this Court the entry of summary judgment, or whether the appealing party was required to file a motion for new trial in the trial court as a preliminary step to appeal.

This Court, in the case of *Kapusta* v. *DePuy Mfg. Co., Inc.* (1968), 141 Ind. App. 479, 229 N. E. 2d 828, in considering a motion to dismiss based on the appellant's having filed a motion for new trial after the entry of summary judgment against him, held that a motion for new trial was properly taken and denied the motion to dismiss.

Thereafter, in the case of *Aldridge* v. *Aldridge* (1968), 143 Ind. App. 529, 233 N. E. 2d 781, this Court reversed the position it had previously taken in *Kapusta, supra,* and held

that a motion for new trial was improper, as the summary judgment proceeding is not a trial. The appellant in *Aldridge* sought transfer to the Supreme Court, which was denied. Subsequently, on April 22, 1968, the Supreme Court amended its prior Rule 2-6 as follows:

> "Provided, however, a motion for a new trial shall not be appropriate for raising error claimed by reason of the entering of a summary judgment. The sustaining of a motion for a summary judgment and the granting of same may be assigned and specified separately in the assignment of errors for consideration on appeal.
>
> "Provided further, however, that in all cases prior to the effective date of this amendment, where a motion for a new trial has been filed following a summary judgment, the parties to said action shall have the same time within which to file a transcript and assignment of errors for appeal as in those cases where a motion for a new trial is proper, and the alleged error if set forth and specified in the motion for a new trial will be considered on appeal. (Adopted April 17, 1940, effective Sept. 2, 1970; amended June 17, 1943, effective Sept. 6, 1943; amended and effective Nov. 30, 1949; amended June 28, 1960, effective in cases filed on or after Sept. 1, 1960; amended and effective April 22, 1968.)"

Therefore, between April 22, 1968, and January 1, 1970, (the effective date of the Indiana Rules of Procedure), the proper procedure to appeal from a final summary judgment was to assign as error in the court of appeal the entry of the summary judgment, and *not* to file a motion for new trial in the trial court.

However, on January 1, 1970, the effective date of the Indiana Rules of Procedure, all prior Supreme Court Rules, including Rule 2-6, were abrogated and superseded by Order of the Supreme Court.[1] Now, under the Indiana Rules of Procedure the manner of perfecting an appeal from the entry of a final summary judgment is again uncertain. Trial Rule 59

---

1. Order of the Supreme Court of Indiana, dated July 29, 1969.

(G) (supra) requiring a motion to correct error as a condition to appeal, excepts therefrom only appeals from interlocutory orders, orders appointing or refusing to appoint a receiver, and orders in proceedings supplemental to execution. Appellate Rule 7.2(A)(1)(a) requires that in *all* appeals from a final judgment, the record shall contain a certified copy of the motion to correct errors filed with the trial court and that no other assignment of errors shall be included in the record.

Reading the above two rules in conjunction we conclude that in an appeal from a final summary judgment, the appealing party must file in the trial court a motion to correct errors as a condition precedent to an appeal.

In the case now before us, the final summary judgment was entered against the appellant on December 22, 1969, nine days before the effective date of the Indiana Rules of Procedure. Appellant perfected his appeal in this Court within 90 days after the entry of the judgment and assigned as error the trial court's sustaining of the appellee's motion for summary judgment. Such procedure complied with the provisions of prior Supreme Court Rule 2-6. Due to the fact that judgment was rendered in December of 1969 and the appellant followed the procedure then in effect in bringing his appeal, we do not feel that the appellant's substantive rights should be adversely affected by a subsequent change in the Rules.

After the 1968 amendment to prior Rule 2-6, the petitioner in the case of *State ex rel. Goodson* v. *Greene County Circuit Court, et al.* (1968), 251 Ind. 447, 241 N. E. 2d 861, was confronted with the same dilemma as the appellant herein. In *Goodson* the Supreme Court refused to deny the petitioner his right to appeal and stated, at page 862:

"The petitioner's substantive rights should not be adversely affected by the adoption of a new rule, particularly in view of the ambiguity of the phrase which has caused petitioner his dilemma."

Although the appellant herein did not file a motion to correct errors in the trial court, we are of the opinion, for the reasons hereinabove set out, that his substantive rights should not be adversely affected by a change in the rules.

After having previously settled the matter of the proper procedure for appealing from a summary judgment, we are reluctant to now change that procedure. However, we believe that the Indiana Rules of Procedure, adopted January 1, 1970, require the party appealing from a final summary judgment to file a motion to correct errors in the trial court as a condition precedent to appeal, as in an appeal from any other final judgment.

For all of the above and foregoing reasons, the Appellee's Motion to Dismiss is overruled.

NOTE.—Reported in 274 N. E. 2d 553.