274 N.E.2d 553 (1971)
Derward LOWS, Appellant (Plaintiff below),
v.
Thomas W. WARFIELD, Appellee (Defendant below).
No. 370A37.
Appellate Court of Indiana, Division No. 1.
October 26, 1971.
*554 Denmure & Denmure, Aurora, Cooper, Cooper, Cooper, Cox & Jacobs, Madison, for appellant.
Wycoff & Greeman, Batesville, Chester R. Callis, Vevay, for appellee.
BUCHANAN, Judge.
STATEMENT OF THE CASE AND FACTS  This appeal arises from a summary judgment rendered against plaintiff-appellant, Derward Lows (Lows), who had brought an action for personal injuries against defendant-appellee, Thomas W. Warfield (Warfield) resulting from a three-car collision involving Lows, Warfield, and one Cleta Mae Cornett (Cornett).
According to the pleadings, affidavits, and depositions filed in this case, it appears Lows was driving his 1956 Chevrolet in an easterly direction away from the City of Aurora, Indiana, toward the City of Lawrenceburg on Highway 50 on the night of October 6, 1961. Highway 50 is a four-lane highway with a four-foot divider between the respective lanes. While entering a long, sweeping curve to his right, Lows observed an automobile driven by Cornett enter the curve going west on U.S. 50. When the Cornett car was approximately in the middle of the curve it crossed both the center strip and east-bound lanes and instead of striking the guardrail on the opposite side, the Cornett car continued down the lane that Lows was traveling. Lows saw the Cornett car coming toward him, and pulled off the edge of the berm as far as he could go. The Cornett car nevertheless hit Lows head-on. After this collision, *555 the Cornett car was sitting at an angle with its rear end out in the road and Lows could see the rear taillight of the Cornett car.
From this point the evidence is conflicting. Lows contends that after some time had elapsed the Cornett woman attempted to free her auto from his, which resulted in four severe sessions of shaking, during one of which the front seat of the Lows car broke loose. It was at this point in time, he says, that his car was hit from the rear by Warfield's car.
Warfield and two other witnesses, however, claim that the second collision between the Warfield car and the Lows car occurred within seconds of the initial collision between Lows and Cornett.
Prior to the closing of issues in this case, Lows made a settlement with Cornett and her insurer, the Vernon Insurance Company. In so doing, Lows signed the following document:
"COVENANT NOT TO SUE
"I, Derward Lows * * * in consideration of * * * ($5600.00) * * do by this instrument covenant with said Vernon Insurance Company on behalf of Cleta Mae Cornett to forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident which happened to Derward Lows on or about the 6th day of October 1961, at or near Wilson Creek Road on U.S. Highway No. 50 between Aurora and Lawrenceburg, Indiana whereby bodily injury was sustained and for the above consideration I hereby agree to hold the said Vernon Insurance Co. on behalf of Cleta Mae Cornett harmless from any damages to myself resulting or to result from said accident."
Lows filed his Complaint in Ripley County on March 22, 1962, and, after one change of venue by each party, the suit finally came to rest in the Switzerland Circuit Court.
Lows' Complaint among other things alleged that Warfield failed to keep a proper lookout for automobiles traveling in front of him; that Warfield failed to keep proper control of his car; that Warfield drove his car at an excessive speed under the circumstances; and that Warfield drove too close to the rear of Lows' car.
In his Answer, Warfield, besides making a general denial of the allegations, asserted the affirmative defenses that the documents which Lows had signed releasing Cornett from liability constituted a general release which discharged Warfield from all liability as a joint tort-feasor with Cornett and further that Lows had received full compensation for his losses.
Plaintiff, of course, replied to the contrary.
After the issues were closed, the parties entered into a pre-trial stipulation which reads as follows:
"1. That on the 26th day of January 1962, the plaintiff, Derward Lows executed the instrument, a copy of which is pleaded in rhetorical paragraph 3 of paragraph 3 of the defendant's answer and received as the consideration therefor, the sum of $5600.00.
"2. That the injuries for which the plaintiff prays damages in this cause are the injuries and damages described in said instrument so executed January 26, 1962 and no other, and are the same injuries set out in rhetorical paragraph 9 of plaintiff's complaint."
Based upon the stipulation made at pretrial conference, Warfield filed a Motion for Judgment on the Pleadings contending that the instrument executed by Lows constituted a general release which released any claim Lows may have had against Warfield. The Switzerland Circuit Court overruled defendant's Motion for Judgment on the Pleadings.
*556 Two weeks before this cause was set for jury trial the third time, i.e., on November 15, 1967, Warfield filed a Motion for Summary Judgment pursuant to Ind. Ann. Stat. § 2-2524 (Burns 1968) with eight exhibits attached along with authorities and arguments. Warfield again argued that the release signed by Lows was an unqualified general release. Secondly he argued that no issue of material fact existed and that, as a matter of law, Warfield could not have been guilty of any acts of negligence, and even if he was negligent, this was no proof that his negligence caused Lows' injuries.
The trial court did not act on Warfield's Motion for Summary Judgment for two years. On December 22, 1969, it sustained the Motion.[1]
Italicizing is used in this statement of facts as an expression of this court's disapproval of what appear to be unnecessary delays in bringing this case to trial. It is of such stuff that public disenchantment with the courts and lawyers is manufactured.
ISSUES  Only two issues are presented for review:
I. Is the instrument signed by Lows a general release or merely a covenant not to sue?
II. Do any material issues of fact exist which would defeat the granting of summary judgment?
As to issue I, Lows argues that the document signed by him did not operate as a general release because (1) the substance of the agreement does not contain words of general release; (2) the agreement is between Lows and the Vernon Insurance Company on behalf of Cornett only; (3) the trial court overruled Warfield's Motion for a Judgment on the Pleadings based on his argument that the covenant operated as a general release as to Warfield.
Warfield argues that the agreement signed by Lows does contain words of general release and, as such, he cannot as a matter of law be held liable.
As to issue II, Lows argues that there are material issues of fact, and specifically points to the conflict of testimony concerning the lapse of time between the original collision between Lows and Cornett and when the Warfield car struck Lows. Warfield, on the contrary, argues that Lows failed to offer any probative evidence in opposition to the Motion for Summary Judgment. Further, Warfield asserts that his Motion shows that he was not guilty of negligence, and even if negligence existed Lows presented no evidence that he was injured by Warfield's actions.

DECISION
ISSUE I. It is our opinion that the agreement signed by Lows was a "covenant not to sue" and not a general release.
In determining whether an agreement is a general release or a "covenant not to sue", the courts of this state have displayed two related trends:
First  instruments in the form of releases will be construed as "covenants *557 not to sue" in order to carry out the intentions of the parties as they appear from the context and the surrounding circumstances. Snyder et al. v. Miller et al., (1939) 216 Ind. 143, 22 N.E.2d 985; Steeg and Associates, Inc. v. Rynearson, (1968) Ind. App., 241 N.E.2d 888.
Second  the controlling factor is the intention of the parties, rather than the express provisions of the instrument itself. Clapper v. Original Tractor Cab Co., (7th Cir.1959) 270 F.2d 616; Landers v. McComb Window and Door Co., (1969) Ind. App., 248 N.E.2d 358. The tenor of this "Covenant Not to Sue" is that of a promise by an injured party not to sue a tort-feasor for his injuries arising out of an accident occurring at a certain time and place in consideration of the receipt of a given amount of money. The usual language of a general release is not present  such words as "release", "discharge", "liability", "full satisfaction" are missing. Lows further indicated his intent by bringing suit against Warfield shortly after executing the Covenant Not to Sue.
Warfield argues that the title given to an instrument will not control its interpretation or determine its nature and cites 17-A C.J.S. Contracts § 294 to support this proposition. This section, however, goes on to state that substance rather than form will control. And so it is here; the substance of the instrument is that of a covenant not to sue and and its title is merely one of the factors indicating the intent of the parties.
Warfield also contends that Lows himself admitted that the instrument was a release in a party examination:
"Q. Have you filed any action against Mrs. Cornett?
A. She is released.
Q. You have no suit pending against her?
A. That's right."
This is testimony by a layman using a word of art. Note he made no mention of releasing his claim against Cornett. This is a critical distinction and is commented on in Parry Mfg. Co. v. Crull, (1913) 56 Ind. App. 77, 82, 101 N.E. 756, as follows:
"A distinction should be obseved between releasing a claim and releasing one of the parties liable. If the injured party releases his claim for damages to one of the parties liable as a joint tort-feasor, he cannot afterward assert it as against the others; but he may release one of the parties so liable without releasing the others." (Emphasis supplied.)
Warfield points to a leading Indiana case on the subject of releases, Cleveland, etc., R. Co. v. Hilligoss, (1908) 171 Ind. 417, 86 N.E. 485, and argues that the language used in the Hilligoss release ("agrees to and does hereby receipt, release, and forever discharge said traction company of and from any and all liabilities") is as strong as that used in the Lows instrument ("do by this instrument covenant with said Vernon Insurance Company * * * to forever refrain from instituting, pressing or in any way aiding any claim"). We cannot agree. The language in Hilligoss "discharges" and "releases" the traction company from "all liability". None of these terms are used in the Covenant Not to Sue before us.
Warfield also cites two other cases which he contends support his argument concerning the release.
In Bedwell v. DeBolt, (1943) 221 Ind. 600, 50 N.E.2d 875, the court held:
"It is well settled that all joint tortfeasors liable for an injury are discharged by the unqualified release of one." (Warfield's emphasis.)
We do not disagree with the statement, but the emphasis should be on "release" rather than "unqualified". As we have indicated above, the intent of the parties here *558 indicates the instrument was not signed as a general release.
Another assertion of Warfield should be considered. In his Answer he alleges that Lows had received full compensation, i.e., had received payment for his injuries.
In Hilligoss, supra, our Supreme Court distinguished release and satisfaction and held that:
"[A] contract, which purports to be a satisfaction for the wrong, and a release of a wrongdoer jointly liable with others, to be effective, must clearly show that the injured party, for a consideration has surrendered to the party in whose favor the contract runs all claim for recompense for and on account of the trespass complained of. If it does so appear, there can be no further proceeding, for the right of action for the wrong is forever gone." (Emphasis supplied.)
The instrument signed by Lows refers in no way to the degree of satisfaction accomplished by the payment of $5600.00 to Lows. It does not clearly show that all claim for the accident has been satisfied. Whether this is full compensation for the injuries sustained is a question for the jury. As the court said in Bedwell v. DeBolt, (1943) 221 Ind. 600, 609, 50 N.E.2d 875, 879:
"[I]t is equally well settled that a covenant not to sue one tort-feasor does not bar an action against the others, but only operates as a satisfaction of the damages, pro tanto, as to the benefits received. * * * And it may be added that under an answer of full satisfaction by a joint tort-feasor a defendant is entitled to a pro tanto credit for anything less than full payment which the plaintiff has received from that source. Whether the payment was in full or partial is for the jury to determine from the evidence." (Emphasis supplied.)
The question concerning the "satisfaction of damages" is therefore a material issue of fact, and we now consider whether additional material issues of fact exist which would also defeat the summary judgment.
ISSUE II. It is our opinion that material issues of fact concerning Warfield's negligence do exist.
Lows initially alleged in his Complaint that Warfield was negligent in that he: (a) failed to keep a proper lookout; (b) failed to keep proper control; (c) drove at excessive speed; and (d) drove too close to the rear of plaintiff's car.
Warfield contends that Lows' response to the Motion for Summary Judgment is based entirely upon the four acts of alleged negligence, and thus fails to meet the requirements of a response to a Motion for Summary Judgment.
This is not true. First, Lows' responsive affidavit does present a material issue of fact concerning Warfield's proper control of his car. It is uncontroverted that the scene of the accident was a four-lane highway and that at the time of the collision Lows was on the right-hand berm of the road, thus leaving Warfield more than a lane and a half to avoid the accident. Because he did not avoid the collision raises a question as to Warfield's proper control of his car, and this question is raised in Lows' affidavit.
Warfield is mistaken in assuming that a failure of Lows to properly respond, or even to respond at all, is by itself justification for entry of a summary judgment in his favor. Our Supreme Court, in Kapusta v. DePuy Mfg. Co., Inc., (1968) 249 Ind. 679, 680, 234 N.E.2d 487, answered this argument:
"After a review of the petition to transfer and of the Appellate Court decision we are of the opinion that the Appellate Court reached a correct result and the petition to transfer should be denied. However, we cannot approve of the language in the opinion which states:
`In any event, appellant's failure to file counter-affidavits gave force to a prima *559 facia [sic] showing that appellee, the moving party, was entitled to summary judgment as a matter of law.' 229 N.E.2d 828 at 832.
We believe this language is contrary to the statute, Ind. Anno. Stat. § 2-2524(e) (Supp. 1967):
`When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.' (our emphasis.)
"The language in the opinion seems to indicate that the trial court need not decide if there is a material issue of fact. Ind. Anno. Stat. § 2-2524(c) (Supp. 1967) provides:
`The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. * * *'

We construe the words `if appropriate' in subsection (e), in light of subsection (c) to still require a finding that there is no genuine issue as to any material fact, whether or not counter-affidavits are filed."[3] (Emphasis supplied.)
There are other issues of fact in addition to the satisfaction of damages issue and the control issue.
Warfield and two other witnesses swore that the second collision involving the Warfield car occurred almost simultaneously with the collision between Lows and Cornett. Assuming this to be true, Lows' allegation that Warfield was following him too closely certainly creates a material issue of fact.
Warfield also argues that Lows has not shown his injuries were caused by Warfield  and thereby creates another material issue of fact.
We have held on more than one occasion that all doubts are to be resolved against the moving party where summary judgment is sought. Wozniczka v. McKean, (1969) Ind. App., 247 N.E.2d 215; Newcomb v. Cassidy, (1969) Ind. App., 245 N.E.2d 846; Doe v. Barnett, (1969) Ind. App., 251 N.E.2d 688. The several issues of material fact alluded to above are evident from the record. We need resolve no doubts as to their existence in this case; they are as easily distinguishable as "new snow on a raven's back."
The judgment of the trial court is therefore reversed with instructions to advance this cause on the trial docket to the earliest possible date.
Judgment reversed.
SULLIVAN, P.J., and LOWDERMILK and ROBERTSON, JJ., concur.
NOTES
[1] The trial court's judgment is defective in two respects. First, it failed to specifically state that it found no material issue of fact to exist, and secondly, it failed to state with particularity its reasons for granting the summary judgment. Singh v. Interstate Finance of Indiana, (1969) Ind. App., 246 N.E.2d 776; Harris v. Young Women's Christian Assn. of Terre Haute, (1968) Ind., 237 N.E.2d 242; Ware v. Waterman, (1969) Ind. App., 253 N.E.2d 708, 709; Indianapolis Power & Light Co. v. Southeastern Supply Co., Ind. App., 257 N.E.2d 722. The procedure under 2-2524 supra has been to remand such judgments back to the trial court. We will not do so here, since the possible issues are few and easily ascertainable. For present requirements under Rule TR. 56, see Harvey's Indiana Practice, Vol. 3, p. 547.
[3] Ind. Ann. Stat. § 2-2524 was repealed January 1, 1970 and replaced by Rule TR. 56, which reads, in part, as follows: "Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the affidavits and testimony offered upon the matters placed in issue by the pleadings of such evidence."