**NUMBER ONE BEVERAGE, INC.,**
**Plaintiff-Appellant,**

v.

**MILLER BREWING COMPANY,**
**Defendant-Appellee.**

No. 1–881A233.

Court of Appeals of Indiana,
First District.

July 20, 1982.

Rehearing Denied Sept. 13, 1982.

Thomas A. Withrow, Diane Hubbard Kennedy, Henderson, Daily, Withrow, Johnson & Gross, Indianapolis, Ging, Free, Brand, Tosick & Van Winkle, Greenfield, for plaintiff-appellant.

Stephen W. Terry, Jr., Charles T. Richardson, Baker & Daniels, Indianapolis, George J. Lewis, Lineback & Lewis, Greenfield, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Number One Beverage, Inc. (Number One) appeals from an order of the Hancock Circuit Court granting defendant-appellee Miller Brewing Company's (Miller) motion for summary judgment upon Number One's complaint for injunctive relief and damages.

We reverse.

## STATEMENT OF THE FACTS

On September 26, 1975, Number One filed a complaint for injunctive relief and damages against Miller and Maco Beverage Corporation (Maco). Number One, a beer wholesaler, commenced this action to prevent Miller, a beer manufacturer, from selling Lite beer to Maco, another beer wholesaler in Madison County, Indiana. Prior to this lawsuit, Miller, by agreement, sold Lite beer to Number One alone in Madison County; however, Miller began selling Lite beer to Maco who was the exclusive distributor of Miller High Life brand beer in Madison County, Indiana. On April 17, 1980, following extensive pretrial discovery, motions and hearings, Number One and Maco entered into, and the trial court granted, a stipulation of dismissal pursuant to a mutual covenant not to sue agreement signed by the parties. Number One agreed to dismiss with prejudice its cause of action against Maco upon certain mutual promises. The stipulation also provided that "it is not the intention of the parties that this dismissal shall in any way affect the claim of Number One against Miller Brewing Company for damages." The underlying agreement, upon which the stipulation was entered between Number One and Maco, involved, *inter alia*, the sale and transfer from Number One to Maco of Number One's "good will, sale records and customer lists which are associated with the sales by Number One of Lite beer to retailers located in Madison County, Indiana." The agreement further contained mutual covenants regarding the lawsuit Number One filed against Miller and Maco, providing:

### "COVENANTS

WHEREAS, NUMBER ONE BEVERAGE, INC. ('Number One') is a beer wholesaler, duly licensed by the State of Indiana to engage in the business of selling alcoholic malt beverage products wholesale, with its principal place of business in Anderson, Madison County, Indiana; and

WHEREAS, MACO BEVERAGE CORPORATION ('Maco') is also a beer wholesaler, duly licensed by the State of Indiana to engage in the business of selling alcoholic malt beverage products wholesale, with its principal place of business in Anderson, Madison County, Indiana; and

WHEREAS, Number One claims that Maco tortiously and wrongfully interfered with certain of its rights to distribute Miller Lite Beer, interfered with existing contractual arrangements between Number One and others pertaining to the distribution and marketing of Miller Lite Beer, and conspired with others to terminate Number One as the Lite beer wholesaler in Madison County, Indiana; and

WHEREAS, Maco denies any liability whatsoever and denies further that it was guilty of any misconduct of any kind; and

WHEREAS, on September 26, 1975, Number One filed a lawsuit against Maco, et al., which lawsuit is presently pending in the Hancock Circuit Court, Cause No. 36537 (the 'Lawsuit'), asking for damages against Maco and for a permanent injunction against Maco and Miller to restrain both of them from selling or delivering Lite beer in contravention of Number One's agreements with Miller; and

WHEREAS, Maco has filed a counterclaim against Number One in such lawsuit; and

WHEREAS, Number One and Maco desire to resolve their differences to avoid continued litigation between themselves, but with the understanding that this Agreement shall not impair or affect the claim of Number One against any other persons, corporation or entity, other than Maco, its successors and assigns;

NOW, THEREFORE, in consideration of mutual covenants and agreements contained herein, NUMBER ONE BEVERAGE, INC. covenants and agrees for and on behalf of itself, its successors and assigns, to and with MACO BEVERAGE CORPORATION, its successors and assigns, that it will immediately discontinue the lawsuit against MACO BEVERAGE CORPORATION, only, styled *Number One Beverage, Inc. v. Miller Brewing Company and Maco Beverage Corporation*, Cause No. 36537, pending in the Circuit Court of Hancock County, and shall dismiss with prejudice all claims asserted against Maco and agrees not to refile or reinstate any claims arising out of the transaction alleged. Maco and Number One agree that it is not the intention of the parties that the dismissal of Maco shall in any way affect Number One's claim against Miller Brewing Company for damages.

IT IS FURTHER COVENANTED AND AGREED, that in consideration of the mutual covenants and agreements contained herein, MACO BEVERAGE CORPORATION covenants and agrees for and on behalf of itself, its successors and assigns, to and with NUMBER ONE BEVERAGE, INC., its successors and assigns, that it will immediately discontinue the lawsuit against NUMBER ONE BEVERAGE, INC., only, styled *Number One Beverage, Inc. v. Miller Brewing Company and Maco Beverage Corporation, Inc.*, Cause No. 36537, pending in the Circuit Court of Hancock County, and shall dismiss with prejudice all claims asserted against Number One and agrees not to refile or reinstate any claims arising out of the transaction alleged. Number One and Maco agree that it is not the intention of the parties that the dismissal of Number One shall in any way affect Number One's claim against Miller Brewing Company for damages.

IT IS FURTHER COVENANTED AND AGREED, that this instrument is not a release or an accord in satisfaction, but rather a contract between NUMBER ONE BEVERAGE, INC. and MACO BEVERAGE CORPORATION; that the execution hereof shall not be construed as a release or an accord in satisfaction; that NUMBER ONE BEVERAGE, INC. reserves all rights against all other persons, firms, corporations, associations and other entities other than said MACO BEVERAGE CORPORATION, only, its present shareholders, successors and assigns; that NUMBER ONE BEVER-

AGE, INC. may proceed against Miller Brewing Company for damages only and not for an injunction; and that MACO BEVERAGE CORPORATION reserves all rights against all other persons, firms, corporations, associations, and other entities other than the said NUMBER ONE BEVERAGE, INC., only, its present shareholders, successors and assigns.

The undersigned further represent and warrant that they were authorized, respectively, to execute this Covenants on behalf of NUMBER ONE BEVERAGE, INC. and MACO BEVERAGE CORPORATION.

IN WITNESS WHEREOF, the undersigned hereby execute this Covenants to be effective as of the 31st day of December, 1979.

NUMBER ONE BEVERAGE, INC.
By: /s/ Richard M. Quinn
Richard M. Quinn, President
MACO BEVERAGE CORPORATION
By: /s/ Jerry R. Smith
Jerry R. Smith, Secretary/Treasurer"

Thereafter, Miller filed its motion for summary judgment alleging that the agreement between Number One and Maco taken with the dismissal with prejudice of any claims Number One had brought against Maco constituted "a release of one defendant (Maco) alleged to be jointly and severally responsible to Number One and, as such, releases the remaining defendant (Miller) from any possible liability."

After initially denying the motion, the trial court, on February 23, 1981, granted Miller's motion for summary judgment, finding, in part, that joint action by Miller and Maco would be necessary before Number One would have any claim against Miller, thus making Miller, and Maco jointly and severally responsible to Number One. The trial court also found that the agreement between Number One and Maco constituted a release of Maco and, as such, released Miller from any possible liability to Number One.

## ISSUES

Number One presents the following issues for review:

I. Is the judgment of the trial court contrary to law in that each and every conclusion of law set forth in the Judgment Entry, upon which the judgment was based, is contrary to law?

A. Did the trial court err as a matter of law in concluding that joint action by Miller Brewing Company and Maco Beverage Corporation would be necessary for Number One Beverage, Inc. to have a claim against Miller Brewing Company making Miller Brewing Company and Maco Beverage Corporation jointly and severally responsible to Number One Beverage, Inc.?

B. Did the trial court err as a matter of law in concluding that the agreement between Number One Beverage, Inc. and Maco Beverage Corporation and the resulting stipulation and order of dismissal with prejudice of the claims against Maco Beverage Corporation constituted a release of Maco Beverage Corporation and released Miller Brewing Company from liability to Number One Beverage, Inc.?

C. Did the trial court err as a matter of law in concluding that Counts I, II, and III of the Complaint are moot because Number One Beverage, Inc. is no longer seeking injunctive relief?

D. Are there genuine issues of material fact?

II. Did the trial court err and abuse its discretion in refusing to permit Number One Beverage, Inc. to file either its amended or supplemental complaint?

## DISCUSSION AND DECISION

Because we reverse, we shall limit our discussion to whether the decision of the trial court granting summary judgment was contrary to law. As Judge Staton said in *Michael Jones v. City of Logansport et al*, 436 N.E.2d 1138, 1142–1143 (Ind.App.1982):

"The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid

in eliminating undue burdens upon litigants and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized; mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant. *Bassett v. Glock* (1977), Ind.App., 368 N.E.2d 18, 20–21.

The summary judgment procedure is an application of the law to the facts when no factual dispute exists. The party seeking the summary judgment, therefore, has the burden to establish that there is no genuine issue as to any material fact. Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

\* \* \* \* \* \*

... In reviewing a grant of summary judgment, this Court uses the same standard applicable to the trial court. *Richards v. Georg [Goerg] Boat & Motors, Inc.* (1979) Ind.App., 384 N.E.2d 1084, 1090 (*trans. denied*). We must reverse the grant of a summary judgment motion if the record discloses an unresolved issue of material fact or an incorrect application of the laws to those facts."

Number One argues that joint action by Miller and Maco, as the trial court found, was not necessary for Number One to maintain a cause of action against Miller. Number One further contends that in its complaint it alleged that Miller's proposed actions would amount to a breach of contract. Maco was not sued for breach of contract under Number One's complaint, but rather Number One alleged that Maco "maliciously and without legal excuse induced and persuaded defendant Miller to breach its Agreement with plaintiff...."

The evidence shows that Number One filed a breach of contract and injunction action against Miller and an action for intentionally inducing a breach of contract against Maco. We agree with Number One

that the trial court erred in concluding that joint action of Miller and Maco would be a necessary antecedent to a successful claim against Miller alone.

As Judge Robertson stated in *Claise v. Bernardi*, (1980) Ind.App., 413 N.E.2d 609, 612:

"An action for intentionally inducing a breach of contract exists when a third party, acting in bad faith, and with knowledge of a contract, induces a party to the contract to breach it. When this occurs, the non-breaching party has an action for interference against the inducing third party. The non-breaching party of course also has an action for breach of contract against the breaching party. *Monarch Indus. Etc. v. Model Coverall Service*, (1978) Ind.App., 381 N.E.2d 1098. *Daly v. Nau*, (1975) 167 Ind.App. 541, 339 N.E.2d 71; *Kiyose v. Trustees of Indiana University*, (1975) 166 Ind.App. 34, 333 N.E.2d 886."

In the case at bar, Miller's selling Lite beer to Maco may prove a breach of contract, and Maco's alleged inducements to Miller may prove tortious interference with contractual relations between Number One and Miller. However, in light of the facts and law, Miller is not a joint tort-feasor with Maco for allegedly breaching a contract. Therefore, we hold that the trial court incorrectly applied the law to the facts and should not have granted Miller's motion for summary judgment.

Assuming, *arguendo*, that Miller and Maco were joint tort-feasors, Number One argues that the agreement between it and Maco, the resulting stipulation and the order of dismissal with prejudice of its claims against Maco did not constitute a release of the claims against Miller, as the trial court had so found.

The general rule is that the unqualified release of one joint tort-feasor, absent fraud or mistake, acts to release all joint tort-feasors. *Cooper v. Robert Hall Clothes, Inc.*, (1979) Ind., 390 N.E.2d 155; *State v. Totty*, (1981) Ind.App., 423 N.E.2d 637, *trans. denied*. In finding that the Court of Appeals correctly recognized that a covenant not to sue is an exception to the

above rule, Chief Justice Givan, writing for the Indiana Supreme Court, stated:

"A basic difference exists between releases and such instruments as covenants not to sue, covenants not to execute and loan receipt agreements. A release is an abandonment or relinquishment of a claim for damages. Under the law a plaintiff may elect to proceed against any one of several tort-feasors. Covenants not to sue, covenants not to execute and loan receipt agreements are formal statements of such election. See *Parry Manufacturing Company v. Crull*, (1913) 56 Ind.App. 77, 101 N.E. 756."

390 N.E.2d at 157. Thus, where a covenant not to sue agreement is executed between a plaintiff and one of several tort-feasors, the plaintiff still may proceed against the other tort-feasors who were not party to the agreement. *Cooper, supra.*

In Indiana, as Number One points out in its brief, it is the *intention of the parties* which determines whether an agreement is a release or a covenant not to sue. In *Lows v. Warfield*, (1971) 149 Ind.App. 569, 575, 259 N.E.2d 107, the court stated.

"It is our opinion that the agreement signed by Lows was a 'covenant not to sue' and not a general release.

In determining whether an agreement is a general release or a 'covenant not to sue', the courts of this state have displayed two related trends:

First—instruments in the form of releases will be construed as 'covenants not to sue' in order to carry out the intentions of the parties as they appear from the context and the surrounding circumstances. *Snyder et al. v. Miller et al.* (1939), 216 Ind. 143, 22 N.E.2d 985; *Steeg and Associates, Inc. v. Rynearson* (1968), 143 Ind.App. 567, 241 N.E.2d 888.

Second—the controlling factor is the *intention of the parties*, rather than the express provisions of the instrument itself. *Clapper v. Original Tractor Cab Co.*, (7th Cir. 1959) 270 F.2d 616; *Landers v. McComb Window and Door Co.* (1969), 145 Ind.App. 38, 248 N.E.2d 358. The tenor of this 'Covenant Not to Sue' is that of a promise by an injured party not

to sue a tort-feasor for his injuries arising out of an accident occuring at a certain time and place in consideration of the receipt of a given amount of money. The usual language of a general release is not present—such words as 'release', 'discharge', 'liability', 'full satisfaction' are missing. Lows further indicated his intent by bringing suit against Warfield shortly after executing the Covenant Not to Sue."

In the case at bar, the agreement executed between Number One and Maco is captioned "Covenants", the document contains language such as "in consideration of the mutual covenants and agreements contained herein" and "it is not the intention of the parties that the dismissal of Number One shall in any way affect Number One's claim against Miller Brewing Company for damages." There is absolutely no language in the instrument presenting an intention to "release" one party and reserve a claim against the other. To the contrary, it is clear from reading this document that the parties intended and did execute a covenant not to sue with each other and, as such, the agreement did not constitute a "release" of Maco, thereby releasing Miller as the trial court had concluded. As we have already held, Miller was not a joint tort-feasor; at best, Miller may have breached an agreement with Number One, but such a breach does not make Miller jointly liable with Maco for possible tortious conduct by Maco in inducing Miller to breach a contract. Miller still would not be released from liability even if Number One's covenant not to sue was instead a release of Maco because Maco and Miller are not joint tort-feasors. Therefore, Number One could release Maco and maintain an action against Miller alone. The trial court erred and it should have denied the motion for summary judgment.

Judgment reversed.

RATLIFF, P. J., and ROBERTSON, J., concur.